689 So.2d 829 (1997)
PRUDENTIAL SECURITIES, INC., et al.
v.
MICRO-FAB, INC.
1951265.
Supreme Court of Alabama.
March 7, 1997.
*830 Cooper C. Thurber, William E. Shreve, Jr., and Daniel S. Cushing of Lyons, Pipes & Cook, P.C., Mobile, for Appellants.
Thomas J. Methvin of Beasley, Wilson, Allen, Main & Crow, P.C., Montgomery; and George W. Finkbohner III of Finkbohner & Lawler, Mobile, for Appellee.
KENNEDY, Justice.
The defendants, Prudential Securities, Inc.; Prudential-Bache Properties, Inc.; and Ron Dezego (all hereinafter referred to as "Prudential") appeal from the trial court's denial of their motion to compel arbitration of the claims presented by the plaintiff, Micro-Fab, Inc. We affirm.
Randy Coleman is the sole shareholder of Micro-Fab, Inc., and is its president. Coleman opened his own individual investment account with Prudential in 1987 and purchased shares of the Prudential-Bache "Tax Credit Properties Limited Partnership." When he opened his account, he signed a "client's agreement," which contained the following paragraph 1 and the following arbitration clause (paragraph 14):
"1. I agree as follows with respect to all of my accounts, in which I have an interest alone or with others, which I have opened or open in the future, with you for the purchase and sale of securities and commodities."
"14. It is understood that the following agreement to arbitrate does not constitute a waiver of the right to seek a judicial forum where such a waiver would be void under the federal securities laws.
"The undersigned agrees, and by carrying an account for the undersigned you agree, that except as inconsistent with the foregoing sentence, all controversies which may arise between us concerning any transaction or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration."
Later, Micro-Fab opened its own separate investment account with Prudential. Micro-Fab never signed or entered into an arbitration agreement with Prudential, and Coleman never entered into an arbitration agreement on behalf of Micro-Fab. Coleman's personal account and money and the Micro-Fab account and money were kept totally separate, Coleman and Micro-Fab holding their own respective shares of various securities.
Coleman and Micro-Fab sued Prudential, alleging fraud in connection with the sale of the limited partnership securities they both had purchased. Coleman later dismissed his individual claims.
Prudential argues that the arbitration agreement between it and Coleman, as an individual, should also encompass any controversies arising out of the relationship between it and Micro-Fab, even though Micro-Fab never signed or entered into an arbitration agreement. Prudential argues that under the Federal Arbitration Act (FAA) and Federal caselaw favoring the enforcement of arbitration clauses, Micro-Fab should be required to arbitrate. Also, Prudential argues that Coleman's direct ownership of Micro-Fab provides such a close relationship between the two as to bind Micro-Fab to Coleman's *831 arbitration agreement even though Micro-Fab was not a party to that agreement. Prudential says Coleman not only owned and controlled Micro-Fab, but had a direct interest related to the interests of Micro-Fab. See Pritzker v. Merrill Lynch, Pierce, Fenner, & Smith, Inc., 7 F.3d 1110 (3d Cir.1993).
Micro-Fab argues that under Alabama law a corporation is an entity distinct and separate from the person or persons who are its shareholders, and it argues that under Alabama law the transactions of a corporation are to be considered separate from those of its shareholders. East End Memorial Ass'n v. Egerman, 514 So.2d 38 (Ala.1987). Basically, Micro-Fab argues that there cannot be "reverse" piercing of the corporate veil in order to bind it to the individual agreements of its shareholder Coleman.
Micro-Fab relies on Nicholas A. Califano, M.D., Inc. v. Shearson Lehman Brothers, Inc., 690 F.Supp. 1354 (S.D.N.Y.1988). In that case, Califano's personal agreement to arbitrate with a broker did not apply to the account of a corporation of which Califano was president, sole shareholder, and designated employee. Micro-Fab further argues that Coleman in no way has operated Micro-Fab as his alter ego, as Prudential would indicate.
In Backus v. Watson, 619 So.2d 1342 (Ala. 1993), this Court discussed the factors that define a corporate alter ego situation; none of those factors exists or has been implicated in this case. The language in the client's agreement referring to other accounts reads in part, "to all of my accounts, in which I have an interest alone or with others, which I have opened or open in the future." It appears this wording refers to accounts Coleman has or opens as an individual and in which he has an interest. This conclusion is founded on the fact that Coleman entered into the "client's agreement" in his individual capacity, not on behalf of Micro-Fab. As the shareholder of Micro-Fab, Coleman has an interest in the corporation, but the Micro-Fab investment account was opened separately by the corporation, not Coleman.
This Court has applied the well-settled rule that the enforcement of arbitration agreements, while favored by Federal Law as sound public policy, must be governed by the plain terms of the agreements themselvesthat the courts are not to twist the language of a contract to achieve a result favored by federal policy but contrary to the intent of the parties. Ex parte Martin, [Ms. 1951420, November 8, 1996] ___ So.2d ___ (Ala.1996). Considering the plain meaning of the language used in the contract between Coleman and Prudential, we cannot hold that they intended for their agreement to encompass a relationship between Micro-Fab and Prudential that had not yet arisen at the time of the agreement.
We also note that the claims of Micro-Fab are not "intimately founded in and intertwined with" the contract containing the arbitration clause. It has been held that a nonsignatory to an arbitration agreement can compel arbitration if such a close connection between claims does exist. Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753 (11th Cir.1993). Even though the claims of Coleman and Micro-Fab involve the same kind of securities, the claims could exist totally independent of one another. Micro-Fab's claims do not arise out of the Coleman-Prudential agreement, nor do they relate to the same transaction.
Recently in Ex parte Jones, 686 So.2d 1166 (Ala.1996), we concluded that where no arbitration agreement existed between two parties, arbitration could not be compelled. The Joneses borrowed money from a lender called The Money Tree to finance the purchase of an automobile. As part of the loan transaction, the Joneses signed an arbitration agreement with Money Tree. A separate contract was drafted by First Colonial Insurance Company, insurer of the loan collateral. The First Colonial contract did not have an arbitration agreement. We held that the Joneses arbitration agreement with Money Tree did not bind them to arbitrate claims relating to the separate First Colonial contract, which did not contain an arbitration agreement. In reversing the trial court's order compelling the Joneses to arbitrate their claims against First Colonial, we relied on the well-founded law that one cannot be required to arbitrate that which he or she has not agreed to arbitrate. Old Republic *832 Ins. Co. v. Lanier, 644 So.2d 1258 (Ala.1994). The same reasoning applies in this case.
We note that in order for the FAA to govern an agreement, (1) there must be a written agreement calling for arbitration and (2) the contract in which the arbitration agreement appears must relate to a transaction involving interstate commerce. Maxus, Inc. v. Sciacca, 598 So.2d 1376 (Ala.1992). There is no written agreement calling for arbitration between Micro-Fab and Prudential.
Micro-Fab is a corporate entity distinct and separate from Coleman, and it cannot be forced to arbitrate under an arbitration agreement entered into by Coleman in his individual capacity. One of the principal reasons for incorporating a business is to form an independent legal entity and to assume corporate obligations and to enter transactions separate from those of the corporation's shareholders. East End Memorial Ass'n, supra. We affirm the trial court's denial of Prudential's motion to compel arbitration.
AFFIRMED.
MADDOX, SHORES, HOUSTON, COOK, BUTTS, and SEE, JJ., concur.
HOOPER, C.J., dissents.
HOOPER, Chief Justice (dissenting).
I respectfully dissent. I believe that the language contained in the arbitration agreement entered into in 1987 between Randolph Coleman and Prudential regarding Coleman's individual investment account is broad enough to bind him in regard to arbitration in the dispute between his corporation, Micro-Fab, and Prudential.
Coleman is the sole shareholder and president of Micro-Fab. Coleman's Micro-Fab account with Prudential was opened with an account form listing Coleman as the "self-employed owner" of Micro-Fab. The account form stated that the account was opened "FBO Randolph S. Coleman," i.e., for the benefit of Coleman. Originally, Coleman and Micro-Fab sued Prudential for fraud in connection with the sale of the same limited partnership securities, but Coleman later dismissed his individual claims. Even though each original plaintiff could have brought these claims individually, the disputes are closely related to one another in terms of the parties and the subject matter of the dispute.
It is not necessary to review the "reverse piercing of the corporate veil" argument proposed by Micro-Fab. Based on the evidence discussed in the paragraph above, I find that the claims of Micro-Fab are "intimately founded in and intertwined with" the contract containing the arbitration clause. Coleman promised in his first agreement with Prudential to arbitrate any claims regarding accounts in which he had "an interest alone or with others, which [he had] opened or [will] open in the future." The liberal language contained in the original arbitration agreement between Coleman and Prudential is broad enough to require Coleman to arbitrate his claims regarding the corporation Micro-Fab, of which he is the sole owner.