Cynthia Ware sued Equifirst Corporation and others, seeking damages on claims that they had obtained title to her real property by fraud, had slandered her title, had conspired to obtain title to her real property by fraud, had conspired to slander her title, and had conspired to invade her privacy. Ware also sought equitable relief, specifically cancellation of a deed and a mortgage. Equifirst moved to compel arbitration of Ware's claims and the claims of Ware's mother, Eloise Harrington (although, in fact, Harrington had not sued and thus had made no claims). Ware's mother was later added as an indispensable party. The trial court, without making findings of fact, denied the motion to compel arbitration. Equifirst appealed from the order denying that motion. We affirm.
The record indicates the following: Ware and Harrington were tenants in common as to real property located in Chambers County. During November 1998, Diann Lewis, a representative of Horton Homes, approached them about purchasing a new mobile home. When Lewis learned that Ware had previously filed a bankruptcy petition, she referred Ware and Harrington to a company known as LaGrange Mobile Homes, Inc. Lewis also referred Harrington and Ware to Tim Robinson, a mortgage broker at LaGrange Magnolia Mortgage Company ("LaGrange Magnolia"), for special assistance with financing.
After selecting a mobile home and having discussions with Robinson, Harrington learned that she, but not Ware, qualified for financing through LaGrange Magnolia and Equifirst. Equifirst agreed to provide Harrington the funds to purchase the mobile home in exchange for a promissory note and a real-estate mortgage securing repayment of the loan used to pay for the mobile home.
In March 1999, although the financing arrangement had not been completed, LaGrange Mobile Homes delivered a mobile home and set it up on the real estate owned by Ware and Harrington. Several weeks later, on March 24, 1999, Robinson telephoned Harrington and told her the closing was scheduled for the following day at 1:30 p.m. Ware asserts that she was unaware of the scheduled closing.
On March 25, 1999, Robinson picked up Harrington at the mobile home. Harrington, her aunt, the closing attorney, and Robinson attended the closing. Ware was not present at the closing. Harrington testified that, during the closing, the closing attorney presented, for Harrington's signature, a deed bearing the printed name of "Cynthia Ware." According to Harrington, the closing attorney instructed Harrington to sign Ware's name to this document, and Harrington says she did so, knowing that the document was a deed, but she says she was unaware of the full impact of her actions. Harrington testified that she did not have Ware's permission to sign Ware's name on the deed and that Ware knew nothing of her actions.
Equifirst denies that Harrington signed Ware's name at the closing. Equifirst alleges that the deed was delivered to Harrington before the closing and with the understanding that she was to obtain Ware's signature on that deed and return *Page 3 
it to Robinson before the closing. Equifirst and Robinson assert that Harrington and Ware understood that, in order to obtain financing for the mobile home, Harrington had to hold, in her name alone, title to the real estate on which the mobile home was to be set up, and that Ware agreed to convey her interest in the real estate to Harrington. Equifirst further alleges that, before the closing, the deed was returned to Robinson's office, bearing the purported signature of Ware. Equifirst alleges that Robinson then presented the deed to a notary public, who notarized the deed, although he had not witnessed Cynthia Ware's signature on it. The deed purporting to convey Ware's interest to Harrington bears the date March 25, 1999; Ware's purported signature was notarized on that same date.
During the closing, Harrington also signed the following rider, attached to the mortgage:
 "Any claim, dispute, or controversy (whether in contract, tort, or otherwise) arising from or related to the loan evidenced by the Note, including but not limited to all statutory claims, any claim, dispute or controversy that may arise out of or is based on the relationships which result from the Borrower's application to the lender for the loan, the closing of the loan, or the servicing of the loan, or any dispute or controversy over the applicability or enforceability of this arbitration agreement or the entire agreement between Borrower and Lender (collectively `claim'), shall be resolved, upon the election of either Borrower or Lender, by binding arbitration, and not by court action, except as provided under `Exclusions from Arbitration' below.
". . . .
 "This agreement to arbitrate shall apply no matter by whom or against whom a claim is made."
Equifirst does not contend that Ware is a signatory to this arbitration rider or to any other arbitration agreement with Equifirst.
In August 1999, Ware sued, seeking money damages on tort claims and seeking cancellation of the deed bearing her name and the mortgage recorded against the real estate. On or about September 21, 1999, Equifirst moved to dismiss the action and to compel arbitration. On or about November 2, 1999, Equifirst moved to join Harrington as an indispensable party and sought to compel both Ware and Harrington to arbitrate. On March 6, 2000, the trial court granted Equifirst's motion to join Harrington, adding her as a party defendant, and denied Equifirst's motions to compel arbitration. Equifirst appeals from the order denying its motion to compel arbitration.
 Standard of Review
An appeal is the appropriate procedure by which to seek review of a trial court's order denying a motion to compel arbitration. HaroldAllen's Mobile Home Factory Outlet, Inc. v. Early, 776 So.2d 777 (Ala. 2000). On appeal, this Court conducts a de novo review of the trial court's denial of the motion to compel arbitration. Parkway Dodge, Inc.v. Yarbrough, 779 So.2d 1205 (Ala. 2000); Green Tree Fin. Corp. v.Vintson, 753 So.2d 497 (Ala. 1999).
 Analysis
We first address the issue whether the trial court erred in denying Equifirst's motion to compel arbitration of Harrington's claims. The record reflects that the only complainant in this action is Ware — Harrington has not asserted any claims against Equifirst. In fact, the record indicates Harrington was added as a party to this action (as a defendant) only upon the motion of Equifirst. In light of these facts, this Court does not understand what *Page 4 
claims it is that Equifirst wants Harrington to arbitrate. While we have no reason, at this juncture, to question Equifirst's assertion that Harrington is a party to the mortgage agreement and the arbitration rider executed at the closing and that the mortgage agreement between Harrington and Equifirst is a transaction to which the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.,[1] applies, we also have no controversy between Harrington and Equifirst to which we may apply the FAA. Because Harrington has asserted no claims, there are no claims for her to arbitrate. The trial court correctly denied Equifirst's motion to compel arbitration insofar as that motion related to Harrington.
We next address Equifirst's claim that Ware should be compelled to arbitrate her claims.
 "[In construing and applying the FAA], [b]oth federal and state courts have consistently held that the duty to arbitrate is a contractual obligation and that a party cannot be required to submit to arbitration any dispute that he did not agree to submit. The language of the contract entered into by the parties determines whether a particular dispute should be submitted to arbitration. . . ."
Capital Inv. Group, Inc. v. Woodson, 694 So.2d 1268, 1270 (Ala. 1997). Accord Southern Energy Homes, Inc. v. Ard, 772 So.2d 1133, 1133-34 (Ala. 2000); Ex parte Stamey, 776 So.2d 85 (Ala. 2000), citing First Options ofChicago, Inc. v. Kaplan, 514 U.S. 938 (1995); Ex parte Stallings Sons,Inc., 670 So.2d 861, 862 (Ala. 1995); ATT Techs., Inc. v. CommunicationsWorkers of America, 475 U.S. 643, 648 (1986). "[W]e recognize that parties cannot be required to arbitrate unless they have agreed to arbitrate." Southern Energy Homes, Inc. v. Ard, 772 So.2d at 1134. The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms," VoltInformation Sciences, Inc. v. Board of Trustees of the Leland StanfordJunior Univ., 489 U.S. 468, 478 (1989), "save upon such grounds as exist at law or in equity for the revocation of any contract." See9 U.S.C. § 2. The "primary purpose" of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms."Volt Info. Sciences, 489 U.S. at 479.
This Court has previously held that the FAA applies only (1) if there is a "written agreement calling for arbitration," Prudential Sec., Inc.v. Micro-Fab, Inc., 689 So.2d 829, 832 (Ala. 1997); and (2) if the contract containing the arbitration provision "substantially affects interstate commerce." Sisters of the Visitation v. Cochran PlasteringCo., 775 So.2d 759, 767 (Ala. 2000); accord Harold Allen's Mobile HomeFactory Outlet, Inc. v. Early, 776 So.2d 777, 781 (Ala. 2000). Thus, in determining whether to compel a party to arbitrate, a trial court must, as an initial matter, determine whether the parties agreed, in writing, to arbitrate. Issues such as whether the contract containing the arbitration provision substantially affects interstate commerce and whether the scope of the arbitration provision encompasses *Page 5 
the party's claims are simply not at issue until this initial determination is made.
The record in this case is completely devoid of any evidence of a written agreement between Equifirst and Ware to arbitrate. Ware is not a party to the mortgage agreement or to the arbitration rider. The only arbitration agreement contained in the record identifies the parties to that agreement as "Eloise Harrington" and "Equifirst." The only signature on this arbitration agreement is that of Eloise Harrington. Neither the arbitration rider nor any of the other documents evidencing the March 25, 1999, transaction between Harrington and Equifirst — with the exception of the deed purporting to bear Ware's name — even mentions or refers to Ware. Thus, Equifirst has failed to establish that Ware expressly agreed to arbitrate any claim against Equifirst.
Equifirst, however, argues that Ware should be compelled to arbitrate her claims against Equifirst because, it contends, she is a third-party beneficiary of the mortgage agreement and has benefited from the mortgage agreement by living in the mobile home with her mother. Equifirst contends that Ware cannot benefit from the mortgage agreement and, at the same time, deny a particular provision of that mortgage agreement, in this case, the arbitration rider. As authority for its argument, Equifirst cites Ex parte Dyess, 709 So.2d 447 (Ala. 1997) (citing SunkistSoft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753 (11th Cir. 1993)); Southern Energy Homes, Inc. v. Gary, 774 So.2d 521 (Ala. 2000);Ex parte Napier, 723 So.2d 49 (Ala. 1998); and Ex parte Gray, 686 So.2d 250
(Ala. 1996). We find none of these cases controlling.
This Court has enforced an arbitration provision against a nonsignatory plaintiff when that nonsignatory plaintiff claimed the benefit of the contract containing the arbitration provision but attempted to avoid the application of the arbitration provision. See, e.g., Ex parte Dyess, supra. However, the record presented in this case gives no indication that Ware is attempting to claim the benefit of the agreement between Harrington and Equifirst while at the same time seeking to avoid the arbitration provision contained in that agreement. Her intentional-tort claims do not seek damages under any of the terms of that agreement, and she does not seek to impose any obligation or responsibility upon Equifirst under that agreement. Thus, the facts of this case distinguish it from Ex parte Dyess.
The other authorities cited by Equifirst are simply inapplicable to this case. In each of those cases, the nonsignatory defendant was attempting to compel a signatory plaintiff to arbitrate, based upon the doctrine of equitable estoppel or other principles of "interrelatedness." See Sunkist Soft Drinks, supra; Southern Energy Homes, supra; Ex parteNapier, supra; Ex parte Gray, supra. The "interrelatedness" discussed in those cases was that found to exist between those claims of the signatory plaintiff that were or could have been asserted against another signatory to the arbitration agreement, and those claims asserted against a nonsignatory to that arbitration agreement. Thus, in those cited cases, the plaintiff had already agreed to submit those claims to arbitration and, based upon equitable-estoppel principles or because of the breadth of the wording used in the parties' agreement to arbitrate, the courts extended that agreement to reach the claims asserted against the nonsignatories.
The legal issues presented in the cases cited by Equifirst are wholly different from those presented in a case such as this one. In this case, a signatory defendant is attempting to compel Ware — a nonsignatory *Page 6 
plaintiff — to arbitrate claims that, based on the record before us, it appears she never agreed to arbitrate. "A party who does not agree to arbitrate a dispute cannot be compelled to submit that dispute to arbitration." Fountain Fin., Inc. v. Hines, 788 So.2d 155, 160
(Ala. 2000) (See, J., concurring in the result in part and dissenting in part), citing First Options of Chicago, supra. The record before us contains absolutely no evidence indicating that Ware ever agreed to submit to arbitration any dispute with Equifirst or any other defendant. Accordingly, we have no basis upon which to compel her to submit her claims against Equifirst to arbitration.
 Conclusion
The trial court correctly denied Equifirst's motion to compel arbitration of Ware's claims, and it appears Harrington has made no claims against Equifirst. We affirm the order denying Equifirst's motion to compel arbitration.
AFFIRMED.
Moore, C.J., and See, Brown, and Harwood, JJ., concur.
[1] The FAA provides, at 9 U.S.C. § 2:
 "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."