This is an appeal by several defendants from an order of the trial court denying the defendants' motion to compel arbitration in a suit involving the sale and financing of a mobile home.
Charlotte Godsey sued Oakwood Mobile Homes, Inc., Oakwood Homes Corporation, Oakwood Acceptance Corporation, and Rhonda Jefferson (hereinafter referred to collectively as "Oakwood"), alleging that a mortgage allegedly executed by her to Oakwood Acceptance Corporation as security for the loan by which she purchased the mobile home was a forgery and that the forgery was a criminal offense and created a cause of action for damages. Godsey also alleged that Oakwood's conduct constituted a slander of title of her interest in the real property described in the mortgage and that Oakwood had committed the tort of outrage.
Oakwood responded to Godsey's complaint by filing a "Motion to Dismiss and to Compel Arbitration." After some discovery was conducted, the trial court set a date for a hearing on the motion, and initially entered an order compelling arbitration.[1]
Godsey subsequently filed a motion to vacate, alter, or amend the order of the *Page 715 
trial court granting Oakwood's motion to compel arbitration. The trial judge set the motion for a hearing, and on July 20, 2001, the trial judge entered an order denying Oakwood's motion to compel arbitration. Oakwood appealed.[2]
 Facts
On or about July 29, 1997, Scottie Godsey, Goodsey's husband, traveled to Tupelo, Mississippi, and purchased a new mobile home from Oakwood Mobile Homes, Inc. Rhonda Jefferson was employed by Oakwood Mobile Homes as a salesperson and was the employee who personally dealt with Mr. Godsey. The purchase was to be financed by Oakwood Acceptance Corporation. On the date of the purchase, several documents were executed, including a purchase contract, a retail-installment contract, and other documents, including an arbitration agreement that is the subject matter of this appeal. As part of the closing of the loan transaction, Mr. Godsey executed a mortgage on a certain parcel of real property located in Winston County, Alabama, where the mobile home was to be installed. From the record before us, it appears undisputed that Charlotte Godsey did not sign any of the documents relating to the purchase of the mobile home and that, although her signature appears on the mortgage, her signature on that document was forged.
 I.
On appeal, Oakwood contends that Godsey, although not a signatory of the arbitration agreement, was a third-party beneficiary of the contracts executed by her husband, including the arbitration agreement, and that she should be equitably estopped from denying that her claims are subject to arbitration. Oakwood says that it is undisputed that the Godseys went from their home in Winston County to Tupelo, Mississippi, to purchase the mobile home and that at the time of the purchase, Godsey and her husband owned, as joint tenants, a parcel of real property located in Winston County.
Although Oakwood admits that Scottie Godsey, the husband, executed the documents relating to the purchase of the mobile home, Oakwood points out that Godsey admitted in deposition testimony that she would have signed the mortgage document if anybody had asked her to sign it.
Oakwood candidly admits that the critical issue presented on this appeal is whether Godsey, as a nonsignatory to the arbitration agreement, can be compelled, as a third-party beneficiary of the contract to purchase and the financing documents for the purchase of the mobile home, to arbitrate her claims.
 II.
Oakwood argues that this Court, along with federal courts, has held that the law relating to third-party beneficiaries applies to arbitration agreements, citing Ex parte Dyess, 709 So.2d 447 (Ala. 1997); Dunn *Page 716 Constr. Co. v. Sugar Beach Condo. Assoc., Inc., 760 F. Supp. 1479
(S.D.Ala. 1991); Ex parte Stamey, 776 So.2d 42 (Ala. 1999). In its brief, Oakwood argues that Godsey's claims arise out of, or relate to, the purchase, financing, or occupancy of the mobile home, and that her claims are "so intertwined with the purchase, occupancy and financing of this mobile home that she, as a third party beneficiary, is bound by the terms of [the] Arbitration Agreement." It bases its argument on the fact that Godsey and Mr. Godsey were joint tenants as to the real property given as additional security for the purchase of the mobile home, and that the record shows that the Godseys asked Oakwood to use their land as collateral because they did not have money for a down payment. Oakwood further argues that the record shows that Godsey's name would have been included on the documents her husband executed but for the fact that she had been through a bankruptcy proceeding and had failed to reestablish her credit. Oakwood also argues that the record shows that Godsey was the person who came to Tupelo, picked out the mobile home, and reviewed the paperwork her husband signed, and that he signed the documents because he was relying on her statement that he could sign the closing statements, which included the arbitration agreement.
Godsey claims that because she did not sign the retail-installment agreement or the separate arbitration agreement she cannot be compelled to arbitrate her claims. She cites this Court's recent case of Equifirst Corp. v. Ware, 808 So.2d 1 (Ala. 2001).
The facts in Equifirst are similar to the facts in this case. In Equifirst, Cynthia Ware sued Equifirst Corporation and others, seeking damages on claims that they had obtained title to her real property by fraud, had slandered her title, had conspired to obtain title to her real property by fraud, had conspired to slander her title, and had conspired to invade her privacy. Ware also sought equitable relief. She specifically sought a cancellation of a deed and a mortgage. Equifirst moved to compel arbitration of Ware's claims and the claims of Ware's mother, Eloise Harrington, who had not sued and who had made no claims, but who was later joined as an indispensable party.
The trial court in Equifirst, without making any findings of fact, denied Equifirst's motion to compel arbitration, and Equifirst appealed.
Because the facts in the Equifirst case are so similar to the facts in this case, we set them out as they are stated in the opinion in that case:
 "The record indicates the following: Ware and Harrington were tenants in common as to real property located in Chambers County. During November 1998, Diann Lewis, a representative of Horton Homes, approached them about purchasing a new mobile home. When Lewis learned that Ware had previously filed a bankruptcy petition, she referred Ware and Harrington to a company known as LaGrange Mobile Homes, Inc. Lewis also referred Harrington and Ware to Tim Robinson, a mortgage broker at LaGrange, Magnolia Mortgage Company (`LaGrange Magnolia'), for special assistance with financing.
 "After selecting a mobile home and having discussions with Robinson, Harrington learned that she, but not Ware, qualified for financing through LaGrange Magnolia and Equifirst. Equifirst agreed to provide Harrington the funds to purchase the mobile home in exchange for a promissory note and a real-estate mortgage securing repayment of the loan used to pay for the mobile home. *Page 717 
 "In March 1999, although the financing arrangement had not been completed, LaGrange Mobile Homes delivered a mobile home and set it up on the real estate owned by Ware and Harrington. Several weeks later, on March 24, 1999, Robinson telephoned Harrington and told her the closing was scheduled for the following day at 1:30 p.m. Ware asserts that she was unaware of the scheduled closing.
 "On March 25, 1999, Robinson picked up Harrington at the mobile home. Harrington, her aunt, the closing attorney, and Robinson attended the closing. Ware was not present at the closing. Harrington testified that, during the closing, the closing attorney presented, for Harrington's signature, a deed bearing the printed name of `Cynthia Ware.' According to Harrington, the closing attorney instructed Harrington to sign Ware's name to this document, and Harrington says she did so, knowing that the document was a deed, but she says she was unaware of the full impact of her actions. Harrington testified that she did not have Ware's permission to sign Ware's name on the deed and that Ware knew nothing of her actions.
 "Equifirst denies that Harrington signed Ware's name at the closing. Equifirst alleges that the deed was delivered to Harrington before the closing and with the understanding that she was to obtain Ware's signature on that deed and return it to Robinson before the closing. Equifirst and Robinson assert that Harrington and Ware understood that, in order to obtain financing for the mobile home, Harrington had to hold, in her name alone, title to the real estate on which the mobile home was to be set up, and that Ware agreed to convey her interest in the real estate to Harrington. Equifirst further alleges that, before the closing, the deed was returned to Robinson's office, bearing the purported signature of Ware. Equifirst alleges that Robinson then presented the deed to a notary public, who notarized the deed, although he had not witnessed Cynthia Ware's signature on it. The deed purporting to convey Ware's interest to Harrington bears the date March 25, 1999; Ware's purported signature was notarized on that same date.
 "During the closing, Harrington also signed the following rider, attached to the mortgage:
 "`Any claim, dispute, or controversy (whether in contract, tort, or otherwise) arising from or related to the loan evidenced by the Note, including but not limited to all statutory claims, any claim, dispute or controversy that may arise out of or is based on the relationships which result from the Borrower's application to the lender for the loan, the closing of the loan, or the servicing of the loan, or any dispute or controversy over the applicability or enforceability of this arbitration agreement or the entire agreement between Borrower and Lender (collectively "claim"), shall be resolved, upon the election of either Borrower or Lender, by binding arbitration, and not by court action, except as provided under "Exclusions from Arbitration" below.
"`. . . .
 "`This agreement to arbitrate shall apply no matter by whom or against whom a claim is made.'"
808 So.2d at 1 — 3. On appeal, Equifirst did not contend that Ware was a signatory to the arbitration rider or to any other arbitration agreement with Equifirst. This Court affirmed the order of the trial court refusing to compel arbitration, and stated: *Page 718 
 "`[In construing and applying the Federal Arbitration Act ("FAA")], [b]oth federal and state courts have consistently held that the duty to arbitrate is a contractual obligation and that a party cannot be required to submit to arbitration any dispute that he did not agree to submit. The language of the contract entered into by the parties determines whether a particular dispute should be submitted to arbitration . . . .'
 "Capital Inv. Group, Inc. v. Woodson, 694 So.2d 1268, 1270 (Ala. 1997). Accord Southern Energy Homes, Inc. v. Ard, 772 So.2d 1133, 1133-34 (Ala. 2000); Ex parte Stamey, 776 So.2d 85 (Ala. 2000), citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938(1995); Ex parte Stallings Sons, Inc., 670 So.2d 861, 862
(Ala. 1995); ATT Techs., Inc. v. Communications Workers of America, 475 U.S. 643, 648(1986). `[W]e recognize that parties cannot be required to arbitrate unless they have agreed to arbitrate.' Southern Energy Homes, Inc. v. Ard, 772 So.2d at 1134. The FAA `simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms,' Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989), `save upon such grounds as exist at law or in equity for the revocation of any contract.' See 9 U.S.C. § 2. The `primary purpose' of the FAA is to ensure `that private agreements to arbitrate are enforced according to their terms.' Volt Info. Sciences, 489 U.S. at 479.
 "This Court has previously held that the FAA applies only (1) if there is a `written agreement calling for arbitration,' Prudential Sec., Inc. v. Micro-Fab, Inc., 689 So.2d 829, 832 (Ala. 1997); and (2) if the contract containing the arbitration provision `substantially affects interstate commerce.' Sisters of the Visitation v. Cochran Plastering Co., 775 So.2d 759, 767 (Ala. 2000); accord Harold Allen's Mobile Home Factory Outlet, Inc. v. Early, 776 So.2d 777, 781 (Ala. 2000). Thus, in determining whether to compel a party to arbitrate, a trial court must, as an initial matter, determine whether the parties agreed, in writing, to arbitrate. Issues such as whether the contract containing the arbitration provision substantially affects interstate commerce and whether the scope of the arbitration provision encompasses the party's claims are simply not at issue until this initial determination is made.
 "The record in this case is completely devoid of any evidence of a written agreement between Equifirst and Ware to arbitrate. Ware is not a party to the mortgage agreement or to the arbitration rider. The only arbitration agreement contained in the record identifies the parties to that agreement as `Eloise Harrington' and `Equifirst.' The only signature on this arbitration agreement is that of Eloise Harrington. Neither the arbitration rider nor any of the other documents evidencing the March 25, 1999, transaction between Harrington and Equifirst — with the exception of the deed purporting to bear Ware's name — even mentions or refers to Ware. Thus, Equifirst has failed to establish that Ware expressly agreed to arbitrate any claim against Equifirst.
 "Equifirst, however, argues that Ware should be compelled to arbitrate her claims against Equifirst because, it contends, she is a third-party beneficiary of the mortgage agreement and has benefited from the mortgage agreement by *Page 719 
 living in the mobile home with her mother. Equifirst contends that Ware cannot benefit from the mortgage agreement and, at the same time, deny a particular provision of that mortgage agreement, in this case, the arbitration rider. As authority for its argument, Equifirst cites Ex parte Dyess, 709 So.2d 447 (Ala. 1997) (citing Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753 (11th Cir. 1993)); Southern Energy Homes, Inc. v. Gary, 774 So.2d 521 (Ala. 2000); Ex parte Napier, 723 So.2d 49 (Ala. 1998); and Ex parte Gray, 686 So.2d 250 (Ala. 1996). We find none of these cases controlling.
 "This Court has enforced an arbitration provision against a nonsignatory plaintiff when that nonsignatory plaintiff claimed the benefit of the contract containing the arbitration provision but attempted to avoid the application of the arbitration provision. See, e.g., Ex parte Dyess, supra. However, the record presented in this case gives no indication that Ware is attempting to claim the benefit of the agreement between Harrington and Equifirst while at the same time seeking to avoid the arbitration provision contained in that agreement. Her intentional-tort claims do not seek damages under any of the terms of that agreement, and she does not seek to impose any obligation or responsibility upon Equifirst under that agreement. Thus, the facts of this case distinguish it from Ex parte Dyess.
 "The other authorities cited by Equifirst are simply inapplicable to this case. In each of those cases, the nonsignatory defendant was attempting to compel a signatory plaintiff to arbitrate, based upon the doctrine of equitable estoppel or other principles of `interrelatedness.' See Sunkist Soft Drinks, supra; Southern Energy Homes, supra; Ex parte Napier, supra; Ex parte Gray, supra. The `interrelatedness' discussed in those cases was that found to exist between those claims of the signatory plaintiff that were or could have been asserted against another signatory to the arbitration agreement, and those claims asserted against a nonsignatory to that arbitration agreement. Thus, in those cited cases, the plaintiff had already agreed to submit those claims to arbitration and, based upon equitable-estoppel principles or because of the breadth of the wording used in the parties' agreement to arbitrate, the courts extended that agreement to reach the claims asserted against the nonsignatories.
 "The legal issues presented in the cases cited by Equifirst are wholly different from those presented in a case such as this one. In this case, a signatory defendant is attempting to compel Ware — a nonsignatory plaintiff — to arbitrate claims that, based on the record before us, it appears she never agreed to arbitrate. `A party who does not agree to arbitrate a dispute cannot be compelled to submit that dispute to arbitration.' Fountain Fin., Inc. v. Hines, 788 So.2d 155, 160 (Ala. 2000) (See, J., concurring in the result in part and dissenting in part), citing First Options of Chicago, supra. The record before us contains absolutely no evidence indicating that Ware ever agreed to submit to arbitration any dispute with Equifirst or any other defendant. Accordingly, we have no basis upon which to compel her to submit her claims against Equifirst to arbitration."
808 So.2d at 4 — 6.
Oakwood, in its reply brief, states that "[a]lthough a reading of the Equifirst decision, at first blush, appears to have some application, "a close reading of the factual setting, as it relates to this appeal, shows that Equifirst is distinguishable. It *Page 720 
argues that the most notable distinction is that in Equifirst a deed was executed and in this case a mortgage was executed. They argue that "[i]n Equifirst, Ms. Ware's entire title had been conveyed away," but that in this case, "Ms. Godsey's name on a mortgage only served to pass legal title to the mortgagee, leaving the mortgagor with equity of redemption, but upon payment of the debt, legal title would revest in the mortgagor, Ms. Godsey." Oakwood also argues that in the Equifirst decision, Ware knew nothing about the closing or the paperwork involved in the transaction, which, it says, is not true in this case. In fact, Oakwood argues that the facts show that Godsey knew about the transaction, and she admitted in her deposition that if she had been asked to sign the mortgage, she probably would have signed it.
Although the record in this case does show that Godsey was more familiar with the transaction than was Ware in the Equifirst case, we do not believe that the facts in this case are sufficiently different to cause us to reach a result different from the one this Court reached in Equifirst, where this Court affirmed an order of the trial court denying a motion to compel arbitration.
Based on the foregoing, the judgment of the trial court is due to be affirmed.
This opinion was prepared by retired Justice Hugh Maddox, sitting as a Justice of this Court pursuant to § 12-18-10(e), Ala. Code 1975.
AFFIRMED.
HOUSTON, LYONS, JOHNSTONE, and WOODALL, JJ., concur.
MOORE, C.J., concurs in the result.
[1] Oakwood states in its brief to this Court that it had previously filed a petition for a writ of mandamus in this Court, but that this Court dismissed the petition as being moot. The record does not include a copy of that petition. We have checked the records of this Court and have found that on November 13, 2000, Oakwood filed a petition for a writ of mandamus, stating that the trial court had set a trial date without ruling on Oakwood's motion to compel arbitration and asking this Court to direct the trial court to rule on its motion (case number 1000280). On May 2, 2001, the trial court granted Oakwood's motion to compel arbitration, and on June 27, 2001, Oakwood filed in this Court a motion to dismiss the petition for a writ of mandamus, stating that the trial court had granted the motion to compel arbitration. On June 29, 2001, this Court dismissed the petition for a writ of mandamus. On May 25, 2001, Godsey filed a motion to alter, amend, or vacate the order compelling arbitration, and on July 20, 2001, the trial court, citing "recent caselaw" (Equifirst Corp. v. Ware, 808 So.2d 1 (Ala. 2001)), vacated the order of May 2, 2001, and denied the motion to compel arbitration. It is from the order denying arbitration that Oakwood now appeals.
[2] The notice of appeal in this case was filed on August 6, 2001. Rule 4(d), Ala.R.App.P., adopted effective October 1, 2001, provides that an order either granting or denying a motion to compel arbitration will be reviewed by appeal. As the Comments to the adoption of Rule 4(d) note, before the adoption of Rule 4(d), review of an order granting a motion compel arbitration was by a petition for a writ of mandamus, while review of an order denying a motion to compel arbitration was by appeal. Rule 4(d) provides that review of either the grant or the denial of a motion to compel arbitration is by appeal.