774 So.2d 521 (2000)
SOUTHERN ENERGY HOMES, INC.
v.
Nathaniel GARY, Sr.
1972290.
Supreme Court of Alabama.
May 26, 2000.
*522 John Martin Galese, Jeffrey L. Ingram, and David A. Norris of John Martin Galese, P.A., Birmingham, for appellant.
Garve Ivey, Jr., and Allison Shelley of Ivey & Ragsdale, Jasper, for appellee.
LYONS, Justice.
Southern Energy Homes, Inc. ("Southern Energy"), appeals from the trial court's order denying its motion to compel arbitration of claims made against it in a lawsuit filed by Nathaniel Gary, Sr. We reverse and remand.

I.
On February 20, 1996, Gary purchased a mobile home from Blue Ribbon Homes, Inc., doing business as Tuscaloosa Home Center. That mobile home had been manufactured by Southern Energy. Bank America Housing Services provided the financing necessary for Gary to purchase the mobile home. In order to complete *523 the purchase transaction, Gary executed three contracts, each of which contained an arbitration provision.
Gary and a representative of Blue Ribbon executed a sales contract. That document is entitled "A Contract Between Blue Ribbon Homes, Inc. and Nathaniel Gary, Sr. (Purchaser)"; it contains the following clause:
"16. ARBITRATION AGREEMENT. The parties agree that the Mobile Home sold to Purchaser has been [in] interstate commerce and any complaint between parties is to be settled by binding arbitration. PURCHASER WAIVES ANY RIGHT HE HAS TO COMMENCE AN ACTION OTHER THAN ARBITRATION AGAINST SELLER. Any controversy or claim arising out of or relating to this contract, or breach thereof, shall be settled under common law arbitration, in accordance with the rules of the American Arbitration Association[,][t]he procedure of which is outlined in the Arbitration Agreement between Blue Ribbon Homes, Inc. and Purchaser."
(Capitalization in original.)
The sales contract also contained the following statement in which Gary acknowledged that Southern Energy had provided a warranty on the home and that he had received that warranty:
"6. PURCHASER ACKNOWLEDGES AND UNDERSTANDS THAT THE MANUFACTURER OF A NEW MOBILE HOME HAS EXTENDED TO THE ORIGINAL PURCHASER THE MANUFACTURER'S NEW HOME WARRANTY AND PURCHASER ACKNOWLEDGES RECEIPT OF SAID WARRANTY. PURCHASER ALSO ACKNOWLEDGES THAT THE MANUFACTURER'S WARRANTY IS THE ONLY WARRANTY GIVEN."
(Capitalization in original.) Gary alleges, however, that he did not receive a copy of the written warranty until the mobile home was delivered.
Gary and a representative of Blue Ribbon also executed a document entitled "Retail Installment Contract, Security Agreement, Waiver of Trial By Jury and Agreement to Arbitration or Reference or Trial by Judge Alone." That document listed Gary as the "Buyer," Blue Ribbon as the "Seller," and Bank America as the "Creditor," and it contained the following clauses:
"a. Dispute Resolution. Any controversy or claim between or among you and I [sic] or our assignees arising out of or relating to this contract or any agreements or instruments relating to or delivered in connection with this contract, including any claim based on or arising from an alleged tort, shall, if requested by either you or me, be determined by arbitration, reference, or trial by a judge as provided below. A controversy involving only a single claimant, or claimants who are related or asserting claims arising from a single transaction, shall be determined by arbitration as described below. Any other controversy shall be determined by judicial reference of the controversy to a referee appointed by the court, or if the court where the controversy is venued lacks the power to appoint a referee, by trial by a judge without a jury, as described below. YOU AND I AGREE AND UNDERSTAND THAT WE ARE GIVING UP THE RIGHT TO TRIAL BY JURY, AND THERE SHALL BE NO JURY WHETHER THE CONTROVERSY OR CLAIM IS DECIDED BY ARBITRATION, BY JUDICIAL REFERENCE, OR BY TRIAL BY A JUDGE.
"b. Arbitration. Since this contract touches and concerns interstate commerce, an arbitration under this contract shall be conducted in accordance with the United States Arbitration Act (Title 9, United States Code), notwithstanding any choice of law provision in this contract. The Commercial Rules of the American Arbitration Association (`AAA') also shall apply. The arbitrator(s) *524 shall follow the law and shall give effect to statutes of limitation in determining any claim. Any controversy concerning whether an issue is arbitrable shall be determined by the arbitrator(s). The award of the arbitrator(s) shall be in writing and include a statement of reasons for the award. The award shall be final. Judgment upon the award may be entered in any court having jurisdiction, and no challenge to entry of judgment upon the award shall be entertained except as provided by Section 10 of the United States Arbitration Act or upon a finding of manifest injustice.
"c. Judicial Reference or Trial by a Judge. If requested by either you or me, any controversy or claim under subparagraph (a) that is not submitted to arbitration as provided in subparagraph (b) shall be determined by reference to a referee appointed by the court who, sitting alone and without [a] jury, shall decide all questions of law and fact. You and I shall designate to the court a referee selected under the auspices of the AAA in the same manner as arbitrators are selected in AAA-sponsored proceedings. The referee shall be an active attorney or retired judge. If the court where the controversy is venued lacks the power to appoint a referee, the controversy instead shall be decided by trial by a judge without a jury."
(Capitalization in original.) The following language appears above Gary's signature on this document:
"YOU AND I HAVE READ AND FULLY UNDERSTAND THIS CONTRACT, INCLUDING THE PARAGRAPH CALLING FOR RESOLVING DISPUTES BY ARBITRATION, REFERENCE, OR TRIAL TO A JUDGE, AND NOT BY JURY TRIAL, AND AGREE THAT THIS CONTRACT SETS FORTH OUR ENTIRE AGREEMENT AND THAT NO OTHER PROMISES HAVE BEEN MADE."
(Capitalization in original.) This contract was assigned by Blue Ribbon to Bank America.
Gary also executed a separate arbitration agreement with Blue Ribbon entitled "Arbitration Agreement Between Blue Ribbon Homes, Inc. and Nathaniel Gary, Sr." It provided that "[a]ny controversy or claim arising out of or relating to that contract or breach thereof between Blue Ribbon Homes, Inc. and Nathaniel Gary, Sr. (Purchaser) dated 2-20-96, shall be settled under common law arbitration, in accordance with the rules of the American Arbitration Association." This agreement also provided for the manner and location of any arbitration.
Southern Energy extended a written warranty on the mobile home purchased by Gary. A copy of the warranty Southern Energy says it provided appears in the record on appeal. The following text appears on the pages of that warranty numbered 4 and 5 (pages 1-3 are not included in the record):
"IF THE RETAILER DOES NOT RESOLVE THE PROBLEM
"If the Retailer is unable to resolve a problem which you feel is covered by your warranty, you should contact the appropriate division of Southern Energy and provide a written description of the problem and the attempts made to resolve it.
"SOUTHERN ENERGY'S OBLIGATIONS
"Upon receipt of a notice of a warranty claim, Southern Energy will repair or replace any parts necessary to correct defects in materials or workmanship, or will take other appropriate action as may be required.
"IF SOUTHERN ENERGY DOES NOT RESOLVE THE PROBLEM
"If Southern Energy's representatives are unable to resolve the problem and you are convinced it is covered by the warranty, you should call Southern Energy's Corporate Headquarters to describe *525 the problem and the attempts made to resolve it.
"IF THE CORPORATE HEADQUARTERS OF SOUTHERN ENERGY DOES NOT RESOLVE THE PROBLEM
"If the problem is still not resolved, you can contact the manufactured housing agency for your state. You will find your state agency's address in this Guide.
"IF THE PROBLEM IS STILL NOT RESOLVED
"If your problems are not satisfactorily remedied through the steps set out above, you are entitled to have the dispute settled through binding arbitration as set out below:
"In the event of any dispute or claim, arising out of or in connection with the design, construction, warranty or repair of any product or component supplied by the Manufacturer, the condition of the product, the conformity of the product, the merchantability of the product, whether such product is or is not `new,' any representations, promises, undertakings or covenants made or allegedly made by the Manufacturer in connection with or arising out of any transaction or undertaking between the Manufacturer and any purchaser, or subsequent purchaser, the Manufacturer and the purchaser of this product agree to submit such dispute or claim to binding arbitration, pursuant to the provisions of 9 USC 1, et seq. and according to the Commercial Rules of Arbitration of the American Arbitration Association then existing."
We note that the warranty is a form document and that nothing on the copy contained in the record indicates that it is the document that was provided to Gary.
On January 8, 1998, Bank America sued Gary, alleging that Gary owed money pursuant to the retail installment contract and that Gary was unlawfully detaining and possessing the mobile home. In response, Gary filed an answer to the complaint, a counterclaim against Bank America, and what he designated as a third-party complaint against Southern Energy and Blue Ribbon.[1] Gary alleged that the mobile home he had purchased contained several defects and that he had complained about the defects to Southern Energy and Blue Ribbon, but that Southern Energy and Blue Ribbon had failed to remedy the defects; that Southern Energy and Blue Ribbon had misrepresented to him that the mobile home was new, had never been damaged, and was built with quality construction and quality materials; that Southern Energy had a practice of refusing to honor its warranties, but that Blue Ribbon had suppressed this practice from him; that Southern Energy had a practice of manufacturing homes with defects and concealing those defects with paneling and carpet, but that Blue Ribbon had suppressed this practice from him; that Southern Energy and Blue Ribbon had misrepresented to him that he was purchasing a quality home and that they would provide service on the home pursuant to warranties; that Blue Ribbon was unjustly enriched when it removed wheels and axles from the home without compensating him; and that Southern Energy and Blue Ribbon had negligently hired, trained, supervised, and retained their employees. *526 Gary's counterclaim included allegations of civil conspiracy, the tort of outrage, theft by deception, and money had and received, as well as a request to be allowed to pursue a class action on behalf of all persons who had purchased homes manufactured by Southern Energy.[2] Gary also alleged that the arbitration clauses in the contracts he signed had been suppressed from him and that the contracts were void for lack of mutuality. Gary's counterclaim included other allegations against Bank America and Blue Ribbon that are not pertinent to this appeal.[3]
Southern Energy, Blue Ribbon, and Bank America filed motions to compel arbitration of Gary's claims against them. After extensive briefing by all parties, the trial court granted Blue Ribbon's motion to compel arbitration and denied the motions to compel arbitration filed by Southern Energy and Bank America. Only Southern Energy appeals. Southern Energy argues that Gary is bound by the arbitration provisions contained in its written warranty, and that, based upon those warranty provisions, the trial court erred in denying its motion to compel arbitration. In the alternative, Southern Energy argues that it is entitled to compel Gary to arbitrate his claims against it based upon the documents Gary signed during the course of purchasing his mobile home.

II.
We first address Southern Energy's argument that the sales contract between Gary and Blue Ribbon, the retail installment agreement between Gary and Bank America, and/or the arbitration agreement between Gary and Blue Ribbon entitle Southern Energy to compel arbitration.
The sales contract contains an arbitration clause that is quite limited. It requires that "any complaint between the parties" be settled by arbitration. The "parties" are Gary, as purchaser, and Blue Ribbon, as seller. This contract does not contain language such as that referring to relationships resulting from the contract, as was the case in the contract this Court reviewed in Ex parte Isbell, 708 So.2d 571 (Ala.1997). Even with the language in the contract we reviewed in Isbell, we concluded that the arbitration provisions in contracts between mobile home purchasers and a dealership were not broad enough to include claims against the manufacturer. Southern Energy is not entitled to compel arbitration based upon the sales contract, which clearly is applicable only to Gary and Blue Ribbon.
The scope of the arbitration clause in the retail installment contract is somewhat broader than the scope of the clause in the sales contract. The retail installment contract is between Gary, as buyer, and Blue Ribbon, as seller, with Bank America specifically named as the assignee of the contract. The arbitration clause contained in the retail installment agreement requires arbitration of "[a]ny controversy or claim between or among you and I [sic] or our assignees arising out of or relating to this contract." (Emphasis added.) Southern Energy, however, as the manufacturer of the mobile home, is not the assignee of Gary, Blue Ribbon, or Bank America. The United States District Court for the Middle District of Alabama reviewed identical language in Wilson v. Waverlee Homes, Inc., 954 F.Supp. 1530 (M.D.Ala.), aff'd, 127 F.3d 40 (11th Cir.1997) (table), and concluded that an entity, such as Southern Energy, that is neither a party to the contract nor the *527 assignee of any party, is not entitled to compel arbitration based on that particular contract language. We find the reasoning of the United States district court persuasive, and conclude that Southern Energy is not entitled to compel arbitration based upon the retail installment contract.
The separate arbitration agreement is, likewise, of no assistance to Southern Energy. The arbitration agreement, like the sales contract, is applicable to the parties who executed it, namely, Gary as the buyer and Blue Ribbon as the seller. This language does not reach the manufacturer, and, therefore, Southern Energy is not entitled to compel arbitration based upon the arbitration agreement between Gary and Blue Ribbon. See Isbell, supra.
After reviewing all of the applicable documents, we conclude that Southern Energy, a nonsignatory as to all three contracts discussed above, is not entitled to compel Gary to arbitrate his claims against it based upon the contractual terms contained in those documents. See First American Title Ins. Corp. v. Silvernell, 744 So.2d 883 (Ala.1999).

III.
Nevertheless, Southern Energy also argues that it is entitled to compel arbitration because, it says, Gary's claims against it are inextricably intertwined with his claims against Blue Ribbon and the trial court has granted Blue Ribbon's motion to compel arbitration. In Ex parte Napier, 723 So.2d 49 (Ala.1998), we addressed the arbitrability of a party's claims against nonsignatories to an arbitration agreement when the party's claims included conspiracy allegations. Like the nonsignatory defendants in Napier, Southern Energy contends that the plaintiff's claims against it are so "intimately founded in and intertwined with" his claims against another defendant, a defendant that is entitled to arbitration, that all of the claims are subject to arbitration. Southern Energy relies on Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir.1993), cert. denied, 513 U.S. 869, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994) (quoting McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342, 344 (11th Cir.1984)).
In Med Center Cars, Inc. v. Smith, 727 So.2d 9 (Ala.1998), we examined the question whether claims against nonsignatories were subject to arbitration. Like Southern Energy, the nonsignatory defendants in Med Center Cars argued that the scope of the arbitration agreement was broad enough to encompass the claims against them and that the plaintiffs' allegations of conspiracy compelled the arbitration of intertwined claims. However, we concluded in Med Center Cars that the language of the arbitration agreement was not broad enough to encompass claims against nonsignatories and that the plaintiffs' conspiracy claims, which alleged generally that a combination of defendants had conspired to violate Alabama law, had not been developed sufficiently to allow us to determine which defendants, if any, had conspired against the plaintiffs. Moreover, in Med Center Cars, some of the defendants against whom conspiracy allegations were made were not entitled to compel arbitration of the plaintiffs' claims against them. In that case, we said, it was possible that the plaintiffs' conspiracy claims could have involved only defendants who were not subject to arbitration.
We are presented with a different situation in the case now before us. Even though the arbitration clauses discussed above are not broad enough to encompass Gary's claims against Southern Energy, we conclude that Gary's claims against Blue Ribbon, a signatory, and those against Southern Energy, a nonsignatory, are sufficiently intertwined that all claims must be arbitrated. In this case, the claims relate primarily to conduct of Southern Energy as to which Blue Ribbon is alleged to be a coconspirator, and, as we read the counterclaim, all of Gary's conspiracy *528 allegations involve Blue Ribbon to some extent.
In his counterclaim, Gary states:
"59. The Defendants [Southern Energy, Blue Ribbon, and Bank America], in combination, conspired together in a concerted action to suppress from the Counterclaimant and other members of the class the fact that the mobile home purchased by Counterclaimant was substandard housing, and that [Southern Energy] has a pattern and practice of not honoring its warranties on new homes."
Gary also alleges that both Blue Ribbon and Southern Energy made fraudulent misrepresentations to him and suppressed material facts from him. For example, his misrepresentation count states:
"19. In order to induce Counterclaimant to purchase a mobile home, Defendants innocently, recklessly, wantonly, and/or intentionally made the following representations of material fact:
"a. That the mobile home was new and had never been damaged; and
"b. that the mobile home was built with quality construction and quality materials.
"20. These representations were a plan and scheme to induce the Counterclaimant to purchase a mobile home.
"21. That despite Defendants' representations, the mobile home was not built with quality construction and quality materials, was damaged, and is substandard housing. Said representations were made willfully to deceive, recklessly, without knowledge, or mistakenly.
"22. Further, Southern, by habit and practice, fails or refuses to honor the warranty agreement.
"23. And further, that Defendant Blue Ribbon, and its agents and employees, knew or should have known of Southern's habit and practice of refusing or failing to honor mobile home warranties, but instead misrepresented this fact to Counterclaimant.
"24. Defendants' acts were fraudulent and part of a pattern and practice intended to maximize profits."
Gary's suppression count states:
"28. That Southern devised a willful and intentional plan, scheme, or pattern and practice of manufacturing mobile homes with substandard materials, substandard labor, and substandard construction practices and suppressed these facts from the Counterclaimant by hiding these defects with wall coverings, paneling, or other such ornamental fixtures as carpet, etc.
"29. That the inferior workmanship is intentional, or done with reckless disregard, and further, this practice is suppressed from the purchaser.
"30. That Defendant Blue Ribbon further innocently, recklessly, wantonly, and/or intentionally suppressed from Counterclaimant the fact that the mobile home [he] purchased was substandard housing, made with inferior materials and workmanship, and that Southern had a pattern and practice of failing to honor the warranty agreement."
Unlike the general conspiracy allegations in Med Center Cars, which did not identify a specific defendant who was subject to arbitration and who was alleged to have been involved in the conspiracy, and in which there were some defendants who were not subject to arbitration, the counterclaim in this case makes specific allegations of conspiracy against Blue Ribbon, an entity clearly subject to arbitration, in addition to the allegations against Southern Energy. Therefore, this case is more like Ex parte Napier, and we conclude that Gary's claims against Southern Energy are closely intertwined with the claims against Blue Ribbon, a party that is subject to arbitration, and that the connection is sufficient to subject all of the claims against Southern Energy to arbitration. See Ex parte Dyess, 709 So.2d 447 (Ala.1997).
Because we conclude that Gary's claims against Southern Energy are inextricably *529 intertwined with his claims against Blue Ribbon, and, therefore, that arbitration of his claims against Southern Energy is appropriate, we need not address Southern Energy's argument that it is entitled to compel arbitration on the basis of the arbitration clause contained within its written warranty.

IV.
We now turn to Gary's arguments that none of the arbitration clauses should be enforceable against him because, he says, he did not make a knowing, willing, or voluntary waiver of his right to a trial by jury; the clauses do not inform him of pertinent information about the arbitration process; and the clauses are contracts of adhesion.[4] This Court has addressed all of these arguments at length in previous cases and has found them unavailing. See Ex parte McNaughton, 728 So.2d 592 (Ala. 1998), cert. denied, 528 U.S. 818, 120 S.Ct. 59, 145 L.Ed.2d 52 (1999); Napier, supra; Ex parte Parker, 730 So.2d 168 (Ala.1999); and Green Tree Fin. Corp. of Alabama v. Wampler, 749 So.2d 409 (Ala.1999). Considering the documents together, we conclude that they clearly pointed out that a purchaser executing them would be waiving the right to a trial by jury and adequately informed the purchaser about the arbitration process.
Gary also argues that the clauses are unconscionable.[5] However, Gary's affidavit states only that he has a 10th-grade education, that he did not know the arbitration clauses existed until his attorney informed him about them, that no one at Blue Ribbon advised him of the existence of the arbitration clauses and what they meant, that he does not know what arbitration is, and that he was given nothing in exchange for being required to sign an arbitration provision. Gary had the burden of proving that the arbitration clauses were unconscionable. Napier, 723 So.2d at 53. He did not present substantial evidence that would support a finding that they were. See Napier, Parker, and Wampler, supra. Therefore, we conclude that the arbitration clauses are enforceable as to Gary.

V.
The trial court erred in denying Southern Energy's motion to compel arbitration. The order denying that motion is therefore reversed, and the cause is remanded.[6]
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, SEE, BROWN, and ENGLAND, JJ., concur.
JOHNSTONE, J., concurs in part and dissents in part.
JOHNSTONE, Justice (concurring in part and dissenting in part).
I concur with the main opinion except that I respectfully dissent from the absolute reversal of the trial court's order denying Southern Energy's motion to compel arbitration, inasmuch as, in my opinion, we should only conditionally reverse the trial court's order. I think our judgment should read as follows: "The order of the trial court denying Southern Energy's motion to compel arbitration shall be reversed and the trial court instructed to grant the motion unless, within 21 days following the issuance of our certificate of judgment in *530 this cause, the plaintiff shall dismiss the intertwined claims against Blue Ribbon; but, if the plaintiff shall timely dismiss the intertwined claims against Blue Ribbon, then the order of the trial order denying Southern Energy's motion to compel arbitration shall stand affirmed."
NOTES
[1] The portion of the pleading that Gary designated as a third-party complaint should properly be designated as a counterclaim with Southern Energy and Blue Ribbon joined as additional parties defendant pursuant to Rule 13(h), Ala. R. Civ. P. In his pleading, Gary refers to himself as the "Counterclaimant" and to Southern Energy, Blue Ribbon, and Bank America as "Defendants." Rule 14 applies to contractual indemnification or instances where the defending party can stand in the shoes of the successful claimant and proceed against a third party. See Home Ins. Co. v. Stuart-McCorkle, Inc., 291 Ala. 601, 285 So.2d 468 (1973). Because none of the parties has raised any issue regarding the designation of the parties, we also will refer to Southern Energy, Blue Ribbon, and Bank America as defendants.
[2] Gary later dismissed his class-action allegations.
[3] Gary alleged that premiums for insurance and an extended-service contract had been financed without his knowledge; that Bank America had represented to him that the total premiums collected had been paid to insurance companies, but that Blue Ribbon had retained a portion of the insurance and service-contract premiums; and that Bank America and Blue Ribbon had concealed from him Blue Ribbon's retention of those premiums.
[4] Gary has not sought appellate review of the trial court's order granting Blue Ribbon's motion to compel arbitration; therefore, Gary's attacks on the enforceability of the arbitration clauses are limited to the issue of the arbitration of his claims against Southern Energy.
[5] See note 4.
[6] Justice Johnstone would remand to allow a period of time for Gary to dismiss his intertwined claims against Blue Ribbon. Gary's actions are not in any way restricted by a mandate from this Court compelling arbitration based on the record before us. We do not have before us any question regarding the effect of a subsequent dismissal with prejudice of all claims that gave rise to Southern Energy's right to insist on arbitration.