The primary issue presented on appeal is whether the trial court properly denied the defendants' motion to compel arbitration on the ground that the plaintiffs presented substantial evidence indicating that they had been fraudulently induced into signing the arbitration agreement.
The facts are largely undisputed. On September 30, 1997, Brian Spraggins and Jennifer Spraggins entered into a contract for the purchase of a house from Jim Walter Homes, Inc. ("JWH"), to be constructed on property the Spragginses owned. A.L. Richardson, an agent and employee of JWH, conducted most of the transaction on behalf of JWH. The contract of purchase includes a paragraph that provides, as follows:
 "9. "This instrument and the other instruments signed in connection with this transaction (including a Limited Warranty) contain the price and all the terms and conditions agreed upon by Buyer and Seller, and no statement, representation or promise not set forth in this contract, or any of the other said instruments, has been made to induce either party to enter into this transaction. IN CONNECTION WITH THE FOREGOING, BUYER ACKNOWLEDGES HAVING READ, UNDERSTOOD AND ACCEPTED THE ARBITRATION AGREEMENT SET FORTH IN EXHIBIT D ATTACHED HERETO AND INCORPORATED BY THIS REFERENCE. BS JS (BUYER'S INITIALS)."
(Capitalization in original.)
The arbitration agreement, which was attached as exhibit D to the purchase contract and incorporated into the contract, reads, in pertinent part, as follows: *Page 915 
 "The parties agree that, at the election of either party, any controversy or claim arising out of or relating to this contract, shall be settled by binding arbitration in accordance with the Rules of the American Arbitration Association [AAA], and judgment upon the award rendered by the arbitrator(s) may be entered in any Court having jurisdiction thereof. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties herein agree to resolve all disputes by such arbitration at the AAA office with the closest geographic proximity to the house location stated herein. The cost of such arbitration shall be divided equally among the parties to the arbitration. Each party shall bear the cost of their own expenses and attorney's fees. The number of arbitrator(s) shall be three.
 "Buyer acknowledges that Seller is a Florida corporation with its principal place of business in the State of Florida. The parties acknowledge that some or all of the materials, fixtures, and equipment, as well as the source of financing contemplated by this contract, will be purchased, received or have their origin from sources outside the state when this contract is entered into."
The Spragginses, in affidavits they filed in opposition to the motion to compel arbitration, do not deny that they signed the contract and the arbitration agreement. Instead, they contend that A.L. Richardson, JWH's agent, misrepresented to them the effect of the arbitration agreement. In identical affidavits, both Brian Spraggins and Jennifer Spraggins stated:
 "My name is Brian [Jennifer] Spraggins. I am over the age of nineteen (19) years. I reside in Lee County, Alabama. This affidavit is based on my personal knowledge.
 "1. On or about September 30, 1997 I purchased a house from Jim Walter Homes, Inc.
 "2. A.L. Richardson handled the transaction. He had me and my spouse sign several documents.
 "3. One document we were told to sign was an arbitration agreement.
 "4. A.L. Richardson told us that arbitration was where if we had a dispute with Jim Walter Homes then we would discuss it with the Construction Manager. If the Construction Manager cannot resolve the problem, then we would go to the district level and then to the regional level. If the problem cannot be resolved by that time, then we would go to court. However, A.L. Richardson assured us that the problem would be resolved well before we reached the regional level of Jim Walter Homes.
 "5. As A.L. Richardson explained `arbitration,' we would still be able to go [to] court with a dispute and would still be able to pre[s]ent our dispute to a jury, if we could not resolve the problem with Jim Walter Homes.
 "6. A.L. Richardson told us that the arbitration agreement was a standard form that all Jim Walter Homes customers must sign."
The Spragginses claim that shortly after their house was constructed they began to experience problems with the house, including exterior siding that buckled and cracked, a cracked foundation, separation of the porch from the house, electrical problems, cracks and gaps above the windows and doors, and other problems. They sued JWH and Walter Industries, Inc., the parent company of JWH; Jerry Tinch, whom they allege is an agent of *Page 916 
JWH; A.L. Richardson;[1] and fictitiously named defendants, A, B, C, and D.
In their complaint, the Spragginses claimed that the defendants represented to them that they would be purchasing a house that would be built with the same quality as JWH's model homes, that would be built with the same quality as represented in JWH's brochure, and that would be built according to local customs, practices, and prevailing building codes. They also asserted claims of fraudulent concealment, breach of contract, breach of express and implied warranties, and breach of an implied warranty of habitability.
After allowing the Spragginses time to conduct discovery on the issue of the enforceability of the arbitration agreement, the trial court denied the defendants' motion to compel arbitration, and the defendants filed this appeal. See Rule 4(d), Ala.R.App.P.
 I.
The standard of review of a trial court's denial of a motion to compel arbitration is de novo, see First American Title Insurance Corp. v.Silvernell, 744 So.2d 883, 886. (Ala. 1999), and Green Tree FinancialCorp. v. Vintson, 753 So.2d 497, 502 (Ala. 1999).
 II.
The parties disagree on the question whether the Spragginses presented substantial evidence indicating that they were fraudulently induced into signing the arbitration agreement.
The defendants, in their brief to this Court, contend that "[t]his Court has previously addressed and rejected the identical fraud in the inducement challenge raised by the Spraggins[es] in this case," citing in support of its contention Harold Allen's Mobile Home Factory Outlet, Inc.v. Early, 776 So.2d 777 (Ala. 2000). The defendants argue:
 "As [Early] recognizes, a claim of fraudulent inducement based on alleged statements made by a salesperson that arbitration means you still get to present your claim to a court is fatally flawed, as a matter of law, because a party cannot reasonably rely on such a statement when the written arbitration agreement signed by them clearly contradicts any such alleged statement."
The Spragginses, on the other hand, argue that Early is clearly distinguishable from this case because the plaintiffs in Early "failed to show that they could not read or understand the arbitration agreement."[2] The Spragginses assert that "[i]n the instant case, [the Spragginses] had limited educations and told Defendant Richardson that they could not understand the arbitration agreement." In support of this argument, they cite the affidavits they filed in opposition to the motion to compel arbitration. However, because their educational *Page 917 
levels are not mentioned in their affidavits, they are apparently relying on a statement made by their counsel during the oral argument on the motion to compel arbitration.[3]
Even assuming, as counsel stated, that neither of the Spragginses had completed high school, that fact alone would not permit them reasonably to rely on the statements allegedly made by A.L. Richardson, when the terms of the arbitration agreement they signed and initialed are to the contrary. Especially significant is the fact that the purchase contract states, in pertinent part, in capitalized letters, as follows:
 "IN CONNECTION WITH THE FOREGOING, BUYER ACKNOWLEDGES HAVING READ, UNDERSTOOD AND ACCEPTED THE ARBITRATION AGREEMENT SET FORTH IN EXHIBIT D ATTACHED HERETO AND INCORPORATED BY THIS REFERENCE. BS JS (BUYER'S INITIALS)." (Emphasis added.)
In Early, this Court stated:
 "The gravamen of the Earlys' allegations is that Harold Allen's salesman did not fully disclose and adequately explain the separate arbitration agreement. However, Harold Allen had no duty to disclose or explain the arbitration agreement. See Green Tree Fin. Corp. v. Vintson, 753 So.2d 497 (Ala. 1999); Patrick Home Center, Inc. v. Karr, 730 So.2d 1171, 1174 (Ala. 1999); Green Tree Agency, Inc. v. White, 719 So.2d 1179, 1180 (Ala. 1998); see also First Family Fin. Servs., Inc. v. Rogers, 736 So.2d 553, 558
(Ala. 1999) ('[W]hen a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract, including an arbitration provision, and will be bound thereby.'). Moreover, the separate arbitration agreement clearly discloses both that it is an arbitration agreement and the terms of that agreement. The Earlys presented no evidence indicating that they cannot read, that the salesman prevented them from reading the documents they signed, or that they could not have understood the arbitration agreement had they taken the time to read it. See Green Tree Fin. Corp. v. Vintson, supra. Thus, based on the evidence in the record, one must conclude that the Earlys did not reasonably rely on the salesman's alleged representation about the meaning of the arbitration agreement. To conclude otherwise would allow the Earlys to shut their eyes to the terms of the documents they voluntarily signed and to blindly rely on the salesman's alleged representation. No such doctrine is supported by Alabama's general contract law, and such a doctrine would, therefore, be contrary to the strong federal policy favoring arbitration. See Quality Truck Auto Sales, Inc. [v. Yassine], 730 So.2d [1164] at 1168 [(Ala. 1999)]. Interpreting the Earlys' allegations as stating a claim of fraudulent inducement of the arbitration agreement, *Page 918 
we conclude that the Earlys did not present substantial evidence in support of that claim, and that the trial court therefore erred in vacating on that ground its order compelling arbitration.
". . . .
 "The Earlys failed to present substantial evidence of fraudulent inducement of the arbitration agreement, and the arbitration provision in Southern Energy's written warranty is enforceable. Accordingly, we reverse the trial court's order denying arbitration and remand the case for that court to enter an order consistent with this opinion."
776 So.2d at 784-86 (footnote omitted).
The Spragginses argue that the "[d]efendants erroneously argue that the facts of the instant case directly correspond [to] the facts of [Early]." (Spragginses' Brief, p. 3.) They further state that Early is clearly distinguishable from this case in that in Early "the plaintiffs failed to show that they could not read or understand the arbitration agreement." They then state that "[i]n the instant case, [the Spragginses] had limited educations and told Defendant Richardson that they could not understand the arbitration agreement," and cite the affidavits. They further contend that "[d]efendant Richardson then undertook to explain the arbitration provision and, in doing so, intentionally misled [the Spragginses] as to the legal effect of the document they were signing," and that the "[d]efendants deliberately suppressed the fact that the Spraggins[es] were forfeiting their constitutional right to a jury trial."
In a reply brief to this Court, JWH and the other defendants argue that there is no evidence in the record indicating that the Spragginses "had limited educations and [that they] told Defendant Richardson that they could not understand the arbitration agreement."[4]
Although the Spragginses, in their brief to this Court, state that the issue on appeal is "[w]hether the trial court's decision to deny the Defendants' Motion to Compel Arbitration is due to be affirmed when [the court] held that substantial evidence had been presented that the [Spragginses] had been fraudulently induced to sign the arbitration agreement," they nevertheless make several other arguments in their brief: 1) that the transaction at issue does not substantially affect interstate commerce; 2) that the defendants had "unclean hands;" 3) that the arbitration agreement is unconscionable; 4) that the Spragginses did not knowingly, willingly, or voluntarily waive their right to a trial by jury; and 5) that defendant Walter Industries is not entitled to enforce the arbitration agreement because it was not a signatory to the agreement.
JWH and the other defendants, in their initial brief to this Court, stated the issue on appeal as follows:
 "Whether the trial court erred in refusing to compel arbitration on the grounds that the Spraggins[es] were fraudulently induced to enter into the arbitration agreement, when the arbitration agreement signed by the Spraggins[es] clearly contradicts the alleged fraudulent statements made by the JWH salesperson."
Although the Spragginses, in their brief on appeal, agree that this is the issue, as we have pointed out above they nevertheless contend that the trial court's denial of the motion to compel arbitration could have been based on one of several other grounds.
Although the trial court did not specify in its order its reasons for denying *Page 919 
the motion to compel arbitration, a reading of the transcript of the oral argument on the motion to compel arbitration suggests that the trial court denied the motion to compel based on the Spragginses' affidavits, which, if believed, sufficiently proved that they were fraudulently induced to sign the arbitration agreement. Because the parties have argued additional issues, we will consider each of those issues; however, we are of the opinion, based on the record before us, that the trial court erred in denying the motion to compel arbitration. It is clear from the record that JWH and the other defendants presented substantial evidence indicating that the transaction at issue substantially affected interstate commerce. Specifically, the affidavit of Jim Heinzen, a property manager for JWH, states that the "building" contract was prepared and approved at JWH's office in Tampa, Florida. Heinzen's affidavit also states that various materials were shipped from Florida for use in the construction of the Spragginses' house and that the laborers who constructed the house were paid from JWH's office in Tampa. Finally, Heinzen's affidavit states that JWH provided financing for the Spragginses' purchase of the house from its Florida office and that the Spragginses send their payments for the house to the JWH office in Tampa. This combination of financing and material originating from outside the state provides the requisite substantial effect on interstate commerce. See, e.g., Ballard Services, Inc. v. Conner, 807 So.2d 519
(Ala. 2001); Benchmark Homes, Inc. v. Aleman, 786 So.2d 1101 (Ala. 2000) (plaintiff admitted that the construction of a house the materials for which were shipped directly to the site had a substantial effect on interstate commerce). Compare Ex parte Kampis, 826 So.2d 819 (Ala. 2002) (the purchase of building materials, which had originated from outside the state, from local Alabama stores was not sufficient to show a substantial effect on interstate commerce).
The Spragginses' argument that JWH and the other defendants were guilty of "unclean hands" seems to be an attempt to recast their argument that JWH and the other defendants were guilty of fraud in the inducement. We cannot accept that argument for the same reasons we could not accept the Spragginses' argument on their fraud-in-the-inducement claim. See alsoSterling Oil of Oklahoma, Inc. v. Pack, 291 Ala. 727, 287 So.2d 847, 864
(1973) (where a contract could not be invalidated on the basis of fraud in the inducement because it was ratified as a matter of law, the doctrine of "unclean hands" was not operative).
On the issue of unconscionability, we have examined the record and we fail to find sufficient evidence to satisfy the four-part test set out inEx parte Dan Tucker Auto Sales, Inc., 718 So.2d 33 (Ala. 1998), or, in this Court's most recent case of Leonard v. Terminix International Co., [Ms. 1010555, Oct. 18, 2002] 854 So.2d 529 (Ala. 2002), in which this Court held that an arbitration clause that precluded class-action treatment of a dispute was unconscionable and therefore unenforceable. See also Mitchell Nissan, Inc. v. Foster, 775 So.2d 138, 141 (Ala. 2000) (recognizing that the plaintiff must present evidence showing "that the buyer could not have obtained the desired product or service, either from this seller or from some other seller, without consenting to the arbitration provision").
We also cannot accept the Spragginses' argument that Walter Industries cannot compel arbitration because it is a nonsignatory to the arbitration agreement. In their complaint, the Spragginses allege that Walter Industries is the "alter ego" of JWH. Cf. Ex parte Gray, 686 So.2d 250 *Page 920 
(Ala. 1996), where this Court recognized that a party who had entered into an arbitration agreement with a car dealership could not avoid arbitration by suing an agent of the dealership who was not a signatory to the agreement. Federal courts that have addressed the issue have recognized that the alter ego of a signatory to an arbitration agreement is entitled to compel its enforcement. See Employers Ins. of Wausau v.Bright Metal Specialties, Inc., 251 F.3d 1316, 1322 (11th Cir. 2001); andFisser v. International Bank, 282 F.2d 231, 234 (2d Cir. 1960).
 III.
We conclude that this case is controlled by the principles of law set out in the Early case. After holding that the Earlys, who signed an arbitration agreement, could not have reasonably relied on the salesperson's oral representations, this Court said:
 "Our conclusion reaffirms the importance of written contracts and the duty on the part of those entering written contracts to act reasonably by reading the terms of the documents they sign. See generally Foremost Ins. Co. v. Parham, 693 So.2d 409, 437-39
(Ala. 1997) (See, J., concurring specially); see also Alfa Mut. Ins. Co. v. Northington, 561 So.2d 1041, 1048-49 (on application for rehearing) (Houston, J., concurring specially) (discussing the `"societal need to uphold the integrity and certainty of written contracts"' and `"`the duty of every contracting party to learn and know its contents before he signs [a writing]'"' (quoting Morris G. Shanker, Judicial Misuses of the Word Fraud to Defeat the Parol Evidence Rule and the Statute of Frauds (With Some Cheers and Jeers for the Ohio Supreme Court), 23 Akron L.Rev. 1 (1989)))."
776 So.2d at 784 n. 7. We hold, therefore, that the Spragginses' claim of fraud in the inducement fails as a matter of law, based on the facts in this case, on the ground that the Spragginses could not have reasonably relied on the alleged misrepresentation of A.L. Richardson. Early, supra. We also cannot accept the Spragginses' arguments on the other issues. Consequently, the judgment of the trial court is reversed and the cause remanded.
This opinion was prepared by retired Justice Hugh Maddox, sitting as a Justice of this Court pursuant to § 12-18-10(e), Ala. Code 1975.
REVERSED AND REMANDED.
Houston, See, Lyons, Brown, Harwood, Woodall, and Stuart, JJ., concur.
Moore, C.J., and Johnstone, J., dissent.
[1] A.L. Richardson failed to respond to the complaint; for purposes of this appeal he is not included as one of the defendants.
[2] In Early, this Court did state:
 "The Earlys presented no evidence indicating that they cannot read, that the salesman prevented them from reading the documents they signed, or that they could not have understood the arbitration agreement had they taken the time to read it. See Green Tree Fin. Corp. v. Vintson, [753 So.2d 497 (Ala. 1999)]. Thus, based on the evidence in the record, one must conclude that the Earlys did not reasonably rely on the salesman's alleged representation about the meaning of the arbitration agreement. To conclude otherwise would allow the Earlys to shut their eyes to the terms of the documents they voluntarily signed and to blindly rely on the salesman's alleged representation."
776 So.2d at 784 (footnote omitted).
[3] In the statement-of-facts section of their brief to this Court, the Spragginses apparently rely on statements made by their counsel during oral arguments before the trial court to the effect that "[o]ur clients have a ninth grade and eleventh grade education," and that they "were presented with the arbitration agreement, read it, didn't understand it, so they asked questions," citing to the record of the oral argument on the motion to compel arbitration, at p. 13. It is clear that the references to the Spragginses' level of education appearing in the record were made by counsel during oral arguments on the motion to compel arbitration before the trial court, and this Court has held that statements of counsel do not constitute admissible evidence. AmericanNat'l Bank Trust Co. v. Long, 281 Ala. 654, 207 So.2d 129
(1968).
[4] See note 3 above.