880 So.2d 428 (2003)
JIM WALTER HOMES, INC., and Jerry Tinch
v.
David SAXTON.
1020513.
Supreme Court of Alabama.
October 24, 2003.
*429 George W. Walker III and J. David Martin of Copeland, Franco, Screws & Gill, P.A., Montgomery, for appellants.
Billy B. Amason of Hand & Associates, LLC, Opelika, for appellee.
SEE, Justice.
Jim Walter Homes, Inc., and Jerry Tinch (collectively "JWH"), defendants in an action pending in the Russell Circuit Court, appeal from that court's order denying their motion to compel arbitration. David Saxton, the plaintiff, argues that it was JWH's burden to prove to the trial court that there was an agreement to arbitrate, and that JWH failed to do so. We reverse and remand.
On April 12, 1999, Saxton entered into a contract with JWH for the construction and financing of a new house; attached as Exhibit D to the contract was a document entitled "Arbitration Agreement-Alabama." The house was to be built by JWH on land Saxton owned in Hurtsboro, at a total cost of $178,596, including financing charges. On June 3, 2002, after the house was constructed, Saxton sued JWH, alleging breach of warranty, fraud, *430 negligence, and breach of contract, and asserting a products-liability claim. On September 25, 2002, JWH moved to compel arbitration of the claims pursuant to Exhibit D. Exhibit D reads, in relevant part:
"The parties agree that, at the election of either party, any controversy or claim arising out of or relating to this contract, or the breach thereof, whether asserted as in tort or contract, or as a federal or state statutory claim, arising before, during or after contract, or as a federal or state statutory claim, arising before, during or after the performance of this contract, shall be settled by binding arbitration in accordance with the Comprehensive Arbitration Rules and Procedures administered by J.A.M.S./Endispute, and judgment upon the award rendered by the arbitrator may be entered in any Court having jurisdiction thereof. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes."
On October 25, 2002, Saxton filed a response in opposition to JWH's motion to compel arbitration asserting six reasons the arbitration provision should not be enforced. On November 4, 2002, the trial court, without identifying the specific grounds for its decision, denied JWH's motion to compel arbitration. On November 8, JWH filed a motion asking the court to reconsider its November 4 order; however, that motion was denied on November 22. On December 30, 2002, JWH filed a timely notice of appeal to this Court.

I.
Review of a trial court's denial of a motion to compel arbitration is properly sought through a direct appeal. Rule 4(d), Ala. R.App. P.; A.G. Edwards & Sons, Inc. v. Clark, 558 So.2d 358, 360 (Ala.1990). We apply the de novo standard of review to such appeals. Green Tree Fin. Corp. of Alabama v. Vintson, 753 So.2d 497, 502 (Ala.1999).

II.
A party seeking to compel arbitration has the burden of proving: (1) the existence of a contract containing an arbitration agreement and (2) that the underlying contract evidences a transaction affecting interstate commerce. Kenworth of Birmingham, Inc. v. Langley, 828 So.2d 288, 290 (Ala.2002). Once those two items have been shown, the burden shifts to the opposing party to present evidence either that the arbitration agreement is not valid or that it does not apply to the dispute in question. Id.
Saxton does not dispute that he signed an agreement to arbitrate any claims that might arise from the contract he entered into with JWH. JWH has also presented evidence indicating that the transaction at issue affects interstate commerce: JWH is a Florida corporation, the money used to finance the construction of Saxton's house was transferred from a bank in Florida, Saxton sent his mortgage payments to Florida, the contract was prepared in Florida, and some of the materials for the actual construction of the house came from outside Alabama. These facts are sufficient to evidence a transaction affecting interstate commerce. See Jim Walter Homes, Inc. v. Spraggins, 853 So.2d 913 (Ala.2002) (concluding that the facts that the contract was prepared in another state, the financing was from out of state, and materials from outside the state were used in the construction provide the requisite effect on interstate commerce).
Saxton offers six reasons he believes *431 the arbitration agreement is invalid.[1] First, he argues that the arbitration agreement is unconscionable because, Saxton says, he had no meaningful choice, the agreement, which reserves JWH's right to access the court system while extinguishing Saxton's, lacks mutuality of remedy, and there is unequal bargaining power between the parties. This Court addressed this same argument in Vintson, where we held that "`agreements to arbitrate are not in themselves unconscionable.'" 753 So.2d at 504 (quoting Ex parte McNaughton, 728 So.2d 592, 598 (Ala.1998)). We also stated:
"The [plaintiffs'] mutuality-of-remedy argument is simply erroneous....
"`The doctrine of mutuality of remedy is limited to the availability of the ultimate redress for the wrong suffered by a plaintiff, not the means by which that ultimate redress is sought. A plaintiff does not seek as his ultimate redress an arbitration proceeding or a court proceeding. Instead, he seeks legal relief (e.g., damages) or equitable relief (e.g., specific performance) for his injury, and he uses the proceeding as a means to obtain that result.'"
753 So.2d at 504 (quoting Ex parte McNaughton, 728 So.2d 592, 598 (Ala. 1998)). Vintson also holds that a party claiming to have had no "meaningful choice" must present evidence indicating that he or she could not have entered into a similar contract without an arbitration requirement either with the same party or with a competitor. 753 So.2d at 504. Saxton has presented no such evidence. Accordingly, his argument that the arbitration agreement is unconscionable fails.
Saxton's second argument is that the arbitration agreement is unenforceable because, he says, he did not knowingly, willingly, and voluntarily waive his right to a jury trial. Saxton fails to provide any legal or factual basis for this assertion. It is, however, undisputed that Saxton signed Exhibit D, which is clearly labeled "Arbitration Agreement-Alabama"; that agreement by its terms applies to Saxton's claims. We stated in Vintson that "`when a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract and will be bound thereby.'" 753 So.2d at 502 (quoting Power Equip. Co. v. First Alabama Bank, 585 So.2d 1291, 1296 (Ala.1991)). Saxton cannot reasonably assert that he did not knowingly, willingly, and voluntarily waive his right to a jury trial when the arbitration agreement he signed states that "[t]he parties agree and understand that they choose arbitration instead of litigation to resolve disputes."
Saxton's third argument is that the contract does not involve interstate commerce. He cites Hays Corp. v. Bunge Corp., 777 So.2d 62, 64 (Ala.2000), for the proposition that "`"[a] construction contract supplying material and labor is an example of a type of contract that is considered intrastate."'" (Quoting Building Maint. Pers., Inc. v. International Shipbuilding, Inc., 621 So.2d 1303, 1305 (Ala. 1993), quoting in turn Green Tree Acceptance, Inc. v. Blalock, 525 So.2d 1366, 1370-71 (Ala.1988).) Saxton fails to recognize, first, that the interstate nature of the *432 contract at issue here is not based solely on the construction of the house. The contract between Saxton and Jim Walter Homes also served as a financing contract, and the financing for Saxton's house originated in Florida. In a previous case involving the interpretation of a similar arbitration agreement in a contract involving Jim Walter Homes, this Court held that "[t]his combination of financing and material originating from outside the state provides the requisite substantial effect on interstate commerce." Jim Walter Homes, Inc. v. Spraggins, 853 So.2d at 919.
Further, to the extent that Hays Corp. stands for the proposition that the mere use of out-of-state materials in a construction project in Alabama does not involve interstate commerce, that decision has been overruled. In Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), the Supreme Court of the United States, in holding that an arbitration agreement involving interstate commerce is specifically enforceable under the Federal Arbitration Act, 9 U.S.C. § 1 et seq., also held that the requirement that an individual contract involve interstate commerce should be read in the broadest possible terms because the word "involving" signals "an intent to exercise Congress' commerce power to the full." Id. at 277, 115 S.Ct. 834. In the years following Allied-Bruce Terminix, this Court developed a five-part test to determine whether a transaction involved interstate commerce. Sisters of the Visitation v. Cochran Plastering Co., 775 So.2d 759 (Ala.2000). However, in Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003), the Supreme Court of the United States held that the test this Court had developed "gave inadequate breadth" to the Federal Arbitration Act, and that every transaction need not have a specific effect upon interstate commerce for the transaction to substantially effect interstate commerce. Instead, the United States Supreme Court held that a transaction should be considered to involve commerce "if in the aggregate the economic activity in question would represent `a general practice ... subject to federal control.'" 539 U.S. at 57, 123 S.Ct. at 2040 (citing Mandeville Island Farms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 236, 68 S.Ct. 996, 92 L.Ed. 1328 (1948)). While the import into Alabama of construction materials for Saxton's house in and of itself may have had a negligible effect on interstate commerce, the interstate shipping of goods in general clearly may be regulated by Congress; thus, the transaction "involves" commerce for purposes of triggering the application of the Federal Arbitration Act. Accordingly, Saxton's argument that the arbitration agreement is not enforceable because the contract does not involve interstate commerce is without merit.
Saxton's fourth argument is that Southern Energy Homes, Inc. v. Gary, 774 So.2d 521 (Ala.2000), stands for the proposition that JWH may not enforce the arbitration agreement because it did not sign the agreement, and only signatories to an agreement to arbitrate may elect to enforce the agreement. Saxton, however, misinterprets our holding in Gary. Gary involved the manufacturer of a mobile home who sought to compel arbitration based on a provision in a contract of sale between the buyer of the mobile home and the seller, who was not a party to the action in which arbitration was sought. The Court refused to enforce the provision in the dispute between the buyer and manufacturer because the provision was limited to "any complaint between the parties" to the contract, and the parties were the buyer and seller. Gary, 774 So.2d at 526 (emphasis added). In the present case, *433 Saxton did sign the agreement to arbitrate, and Saxton and JWH are, respectively, the buyer and the seller. See Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 281 (Ala.2000) (concluding that a party that did not sign an arbitration agreement may enforce the agreement against another party that did sign it).
Moreover, Saxton's position is inherently inconsistent. In his complaint, he alleges that JWH breached its contract with him. However, he now argues that the contract is invalid because JWH did not sign it. This Court has stated that a party may not "pick and choose which contract provisions [he] wishes to have benefit [him] and reject those [he] does not wish to have bind [him]; instead, [he] must accept or reject the entire contract." Credit Sales, Inc. v. Crimm, 815 So.2d 540, 546 (Ala.2001). Because Saxton has taken the position that JWH breached its contract with him, he cannot now claim that the contract is invalid because JWH failed to sign it.
Saxton's fifth argument is that because the arbitration agreement, i.e., Exhibit D, "Agreement to Arbitrate-Alabama," was signed a month before the final contract was executed, it is a separate agreement from that contract, and is unenforceable because it lacks consideration. However, the arbitration agreement is attached as an exhibit to the final contract and that contract expressly incorporates the arbitration agreement; indeed, Saxton initialed the clause that referenced the arbitration agreement. See Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 746 (Ala.2000) ("Under state-law principles of contract interpretation, parties may be bound by documents incorporated by reference.").[2]
Saxton's sixth and final argument is that the arbitration agreement is negated by the choice-of-law provision in the contract, which states the contract is to be governed by the laws of the State of Alabama. Saxton argues that because under § 8-1-41(3), Ala.Code 1975, agreements to submit future controversies to arbitration cannot be specifically enforced, the arbitration agreement cannot be enforced. However, in Allied-Bruce Terminix, the Supreme Court of the United States held that the Federal Arbitration Act preempts § 8-1-41(3) of the Alabama Code in a contract, like this one, that involves interstate commerce. 513 U.S. at 270, 115 S.Ct. 834. See also Woodmen of the World Life Ins. Soc'y v. White, 35 F.Supp.2d 1349 (M.D.Ala.1999) (concluding that a dispute was subject to arbitration under the Federal Arbitration Act, notwithstanding a choice-of-law provision that mandated the application of Alabama law).

III.
Because JWH has proven the existence of an arbitration agreement and presented the necessary evidence proving that the underlying contract involves interstate commerce, and because Saxton has presented no evidence indicating that the arbitration agreement is not valid, we reverse the trial court's order denying JWH's motion to compel arbitration and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
*434 JOHNSTONE, J., concurs in the rationale in part and concurs in the judgment.
JOHNSTONE, Justice (concurring in the rationale in part and concurring in the judgment).
But for one reservation, I concur in the main opinion. The reservation is that I concur only in the result of the analysis of the issue of whether the nexus of the contract with interstate commerce is sufficient for the Federal Arbitration Act to apply.
NOTES
[1] Saxton presented these six arguments to the trial court. On appeal, Saxton's sole contention is that this Court should "surmise by the fact that the trial court ruled against JWH and Tinch that they did not successfully carry their burden of establishing an agreement to arbitrate." That contention is without legal or factual basis. However, because the trial court did not state the grounds on which its decision was based, this Court will address Saxton's six arguments.
[2] This Court has rejected the argument that an arbitration agreement requires consideration separate and distinct from consideration that supports the contract as a whole. Vintson, 753 So.2d at 502.