L. Thomas Development, Inc. ("Thomas Development"), and Lowell Thomas (hereinafter referred to collectively as "Thomas"); Sloan Southern Homes, LLC ("Sloan Homes"), and Pam Sloan (hereinafter referred to collectively as "Sloan"); and FPD, LLC, appeal from an order denying their motions to compel arbitration of their dispute with Brenda McQueen and her husband, Alvin McQueen. We reverse and remand.
The events underlying this dispute began when the McQueens contracted with Thomas Development to purchase real estate upon which Thomas Development would construct a residence for the McQueens. According to the McQueens, Sloan Homes was the "listing agent" for FPD, which was the predecessor in title to Thomas Development. The purchase/construction contract contained the following pertinent provision:
 "[The McQueens] and [Thomas Development] agree that the construction of a home necessarily involves interstate commerce considering the sources of the various components used in the building of the house. [The McQueens] and [Thomas Development] agree that any controversy or claim arising from or relating to this agreement, or the breach thereof, or any and all claims arising between [the McQueens] and [Thomas Development], their successors or assigns shall be settled by binding arbitration pursuant to the Arbitration (binding) rules of the Better Business Bureau, except as such rules may be modified herein; or in the event the services of the Better Business Bureau are unavailable, the arbitration shall be conducted in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, as last revised."
(Emphasis added.) The contract was signed on December 11, 2003, by the McQueens, Lowell Thomas, and Pam Sloan.
On February 8, 2005, the McQueens sued Thomas, Sloan, and FPD, alleging against Thomas and Sloan improper and incomplete construction of the house. The complaint also alleged that the defendants had misrepresented or concealed facts regarding the nature of the neighborhood and the suitability of the property for residential use. Thomas, Sloan, and FPD moved to compel arbitration based on the arbitration clause in the purchase/construction contract. These appeals are from the trial court's denial of the motions *Page 403 
to compel arbitration. On appeal, the parties join issue on a single question — whether the arbitration clause is unconscionable.
It is well settled that "[t]he burden of proving unconscionability of an arbitration agreement rests with the party challenging the agreement." Green Tree Fin. Corp. ofAlabama v. Vintson, 753 So.2d 497, 504 (Ala. 1999);Briarcliff Nursing Home, Inc. v. Turcotte,894 So.2d 661, 665 (Ala. 2004); see also Young v. Jim Walter Homes,Inc., 110 F.Supp.2d 1344, 1347 (M.D.Ala.2000). The party challenging the agreement must demonstrate that "(1) [the challenged] terms . . . are grossly favorable to a party that has (2) overwhelming bargaining power." American Gen. Fin.,Inc. v. Branch, 793 So.2d 738, 748 (Ala. 2000) (summarizing the four factors set forth in Layne v. Garner,612 So.2d 404, 408 (Ala. 1992)).
The issue regarding the arbitration clause in this case stems from the clause referring disputes to the Better Business Bureau ("the BBB"). The rules of the BBB expressly exclude the recovery of punitive damages.
The defendants all agree that the punitive-damages limitations in the BBB rules are "unavailable" under Alabama law. See Exparte Thicklin, 824 So.2d 723, 733 (Ala. 2002) (a provision restricting the arbitrator's power to award punitive damages "violates public policy, and its enforcement would be unconscionable"), overruled on other grounds, Patriot Mfg.,Inc. v. Jackson, 929 So.2d 997 (Ala. 2005); CavalierMfg., Inc. v. Jackson, 823 So.2d 1237, 1246 (Ala. 2001) ("an arbitration clause that for-bids an arbitrator from awarding punitive damages is contrary to public policy in Alabama and, thus, is void"), overruled on other grounds, Ex parteThicklin, supra. Consequently, Thomas and Sloan stated to the trial court, and state again in this Court, that they arenot invoking the services of the BBB, but, rather, seek arbitration "conducted in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association" ("the AAA"). Similarly, "FPD simply argued that it would be okay to agree to a different set of rules, `rather than get into a bunch of wrangling and appeals and such.'" McQueens' brief, at 24.
For example, Sloan states: "The Defendants have declared that they are foregoing [sic] any attempt to require [BBB] services or rules be used. . . . Therefore, any argument of unconscionability relating to the BBB rules is moot." Sloan's brief, at 48. Indeed, it is clear that "[n]one of the Defendants [is] attempting to enforce the [BBB] rules." Thomas's reply brief, at 3.[1]
The defendants then contend that, because the purchase/construction contract provides for recourse to the rules of the AAA "in the event the services of the Better Business Bureau are unavailable," the arbitration clause is not unconscionable. The correct approach, as articulated by FPD, is "to remove only the offending portion of the arbitration clause," namely the BBB option, "rather than invalidating the [arbitration] provision as a whole." FPD's brief, at 34.
Despite the defendants' concessions that the punitive-damages limitation in the BBB rules is unenforceable, the McQueens insist that the arbitration clause cannot be cured simply by the defendants' waiver, or the court's excision, of the BBB option. In an argument that merges the defenses of fraud and unconscionability, the McQueens state:
 "In the present case, the arbitration clause purports to be a forum selection *Page 404 
clause, yet it is not, because the contract secretly displaces . . . an award of punitive damages. . . . These deprivations of the McQueens' legal rights are not facially apparent in the arbitration clause as they are hidden in the [BBB] rules. Because of that, every statement in the `arbitration clause' is an untruth and a fraud."
McQueens' brief, at 26-27 (emphasis added). Thus, the gist of their argument is that the arbitration clause is unconscionable because it is fraudulent, and it is fraudulent, they say, because it did not disclose or explain the limitation in the BBB rules on awarding punitive damages. For a number of reasons, we disagree.
First, it is well settled that "[a] dealer is under no duty to disclose, or explain, an arbitration clause to a buyer."Johnnie's Homes, Inc. v. Holt, 790 So.2d 956, 960
(Ala. 2001); see also Jim Walter Homes, Inc. v.Spraggins, 853 So.2d 913, 917 (Ala. 2002); HaroldAllen's Mobile Home Factory Outlet, Inc. v. Early,776 So.2d 777, 784 (Ala. 2000); Green Tree Fin. Corp. v.Vintson, 753 So.2d 497 (Ala. 1999); Patrick Home Ctr.,Inc. v. Karr, 730 So.2d 1171, 1174 (Ala. 1999); and JimBurke Auto., Inc. v. Murphy, 739 So.2d 1084, 1087
(Ala. 1999). The mere absence of such disclosure or explanation does not, therefore, form the basis of a fraud defense to arbitration.[2]
Second, "[u]nder Alabama law, arbitration provisions are not per se unconscionable." Providian Nat'l Bank v. Screws,894 So.2d 625, 628 (Ala. 2003). Thus, a party opposing arbitration on the ground of unconscionability must demonstrate that arbitration would involve certain terms or conditions — other than the arbitration clause itself — that "are grossly favorable" to the party seeking to compel arbitration. American Gen. Fin., Inc. v. Branch,793 So.2d at 748. It is self-evident that a party opposing arbitration cannot make such a showing where it is concededby all parties that the terms to which the opponent objects are unenforceable and that resort to those terms cannot, therefore, be made. This is such a case. The McQueens cite no provision — other than the indisputably unenforceable BBB rules — that is "grossly unfavorable" to them.
Although this Court will "excise void or illegal provisions in a contract, even in the absence of a severability clause," Ex parte Celtic Life Ins. Co., 834 So.2d 766
(Ala. 2002) (emphasis added), the AAA option is thefunctional equivalent of a severability clause specifically tailored to the arbitrability of this contract. Like the standard severability provision, the arbitration clause provides, in effect, that, if arbitration cannot be conducted according to the BBB rules, then it must nevertheless be conducted pursuant to the rules of the AAA. In other words, theparties expressly agreed that the unavailability of the BBB would not void the overall right to arbitrate.
"`A court may not make a new contract for the parties or rewrite their contract under the guise of construing it.'"Turner v. West Ridge Apartments, Inc., 893 So.2d 332,335 (Ala. 2004) (quoting Ex parte Dan Tucker Auto Sales,Inc., 718 So.2d 33 (Ala. 1998)). Moreover, it is the "`general "duty of the court to preserve so much of a contract as may properly survive its invalid and ineffective provisions."'" Anders v. Hometown Mortgage Servs.,Inc., 346 F.3d 1024, 1032 (11th Cir.2003) (quoting Exparte Celtic Life, supra, *Page 405 
quoting in turn 17A C.J.S. Contracts § 297 (1999)); see also McCullough v. Clinch-Mitchell Constr.Co., 71 F.2d 17, 21 (8th Cir.1934) ("It is the duty of the court to preserve as much of the contract as may properly survive.").
In summary, the "services of the [BBB] are unavailable" as a matter of law, because the BBB rules purport to exclude punitive damages. However, because the parties agreed to proceed to arbitration under the rules of the AAA in the event that resort to the BBB was unavailable, the arbitration clause is not unconscionable. The trial court erred, therefore, in denying the defendants' motions to compel arbitration of this dispute. The trial court's order denying those motions is reversed, and this cause is remanded for the entry of an order compelling arbitration.
1041893 — REVERSED AND REMANDED.
1041906 — REVERSED AND REMANDED.
1050068 — REVERSED AND REMANDED.
NABERS, C.J., and LYONS, SMITH, and PARKER, JJ., concur.
[1] In its reply brief, FPD adopted the arguments of Sloan and Thomas.
[2] The McQueens do not assert that they requested a copy of the BBB rules or that they inquired as to the contents of those rules before signing the contract.