SCI Alabama Funeral Services, Inc. ("SCI"), appeals from the denial of its motion to compel arbitration of the claims asserted by Wilbert E. Lanyon ("Lanyon"), as administrator of the estate of Steven Lanyon,[1] deceased. We reverse and remand.
 Facts
Lanyon was Steve Lanyon's father. Steve died at an out-of-state hospital on August 1, 2002. Lanyon gave SCI permission to take possession of Steve's body and to have it transported to SCI's facilities for funeral services and burial. SCI received the body at its facilities on August 2, 2002. On August 3, Lanyon signed a form authorizing the action that SCI had already taken — taking possession of Steve's body and transporting Steve's body from the out-of-state hospital to SCI's facilities. This authorization provided that SCI was to "embalm, care for and prepare for disposition of the body of Steven Lanyon in accordance with its customary practices."
On August 3, after SCI had obtained possession of Steve's body, Lanyon and other family members met with representatives of SCI to discuss the funeral arrangements and services to be provided by SCI. After Lanyon and other members of Steve's family had made the funeral arrangements and decided on the services they wanted SCI to perform, the SCI representative completed the first page of a document entitled "Statement of Funeral Goods and Services Selected/Purchase Agreement" ("the Purchase Agreement"). The SCI representative then left the room and went to his office to prepare the Purchase Agreement for the Lanyons, listing Lanyon as the purchaser of the goods. At that time Terry Adams, Steve's former employer, approached the SCI representative and indicated that he would be paying for the funeral and the other services the family had selected. Adams wrote a check to SCI for the amount indicated on the Purchase Agreement; the SCI representative accepted Adams's check and had Adams execute the Purchase Agreement. The Purchase Agreement identified the Lanyon family as having authorized the services that SCI was to provide. After Adams had paid SCI and signed the Purchase Agreement, the SCI representative and Adams returned to Lanyon and the other family members and announced that everything had been paid in full.[2]
As the result of problems related to the embalming, Steve's body began to decompose before his burial. Lanyon sued SCI, alleging (1) negligence or wantonness in the storing or embalming of Steve's body, (2) negligence or wantonness in handling Steve's remains, and (3) the tort of outrage. SCI moved to compel arbitration of Lanyon's claims, relying on an arbitration agreement contained in the Purchase Agreement. That document contained the following relevant language:
 "Notice: By signing this agreement, you are agreeing that any claim you may have against the seller [SCI] shall be *Page 497 
resolved by arbitration and you are giving up your right to a court or jury trial as well as your right of appeal.
". . . .
 "Arbitration. You agree that any claim you may have relating to the transaction contemplated by this agreement (including any claim or controversy regarding the interpretation of this arbitration clause) shall be submitted to and finally resolved by mandatory and binding arbitration in accordance with the statutes, rules or regulations governing arbitrations in the state where this agreement has been executed. In the absence of such statutes, rules or regulations, the arbitration proceedings shall be conducted in accordance with the applicable rules of the American Arbitration Association (`AAA'); provided, however, that the foregoing reference to the AAA Rules shall not be deemed to require any filing with that organization, nor any direct involvement of that organization. Notwithstanding anything to the contrary in the applicable statutes, rules or regulations, the arbitrator shall be selected by mutual agreement of the parties. If the parties fail to or are unable to agree on the selection of an appropriate arbitrator, the AAA shall select the arbitrator pursuant to its rules and procedures upon the application of one or both parties. This agreement to arbitrate also applies to any claim or dispute between or among the seller, you as the purchaser, any person who claims to be a third party beneficiary of this agreement, any of the seller's employees or agents, any of the seller's parent, subsidiary, or affiliate corporations, and any of the employees or agents of those parent, subsidiary or affiliate corporations. Except as may be required by law, neither party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior consent of both parties."
Lanyon's signature does not appear on the Purchase Agreement. On October 14, 2003, the trial court denied SCI's motion to compel arbitration, finding that the transaction involved interstate commerce but that as a nonsignatory to the agreement containing the arbitration provision Lanyon could not be compelled to arbitrate. SCI appeals.
 Standard of Review "This Court reviews de novo the denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So.2d 1205 (Ala. 2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Id. `[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.' Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala. 1995) (opinion on application for rehearing)."
Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala. 2000) (emphasis omitted).
 Discussion
In this case, SCI, a signatory to an arbitration agreement, seeks to compel Lanyon, a nonsignatory, to arbitrate. Arbitration is a matter of contract and "`"`a party cannot be required to submit to arbitration any dispute he has not agreed to submit.'"'" National Auction Group, Inc. v. Hammett,854 So.2d 65, 69 (Ala. 2003) (quoting Cook's Pest Control, Inc. v.Boykin, 807 So.2d 524, 526 (Ala. 2001) *Page 498 
(quoting other cases)). "`The language of the contract entered into by the parties determines whether a particular dispute should be submitted to arbitration. . . .'" Equifirst Corp. v.Ware, 808 So.2d 1, 4 (Ala. 2001) (quoting Capital Inv. Group,Inc. v. Woodson, 694 So.2d 1268, 1270 (Ala. 1997)). This Court has enforced arbitration provisions against nonsignatory plaintiffs under either a third-party beneficiary theory or an intertwined-claims theory.
Lanyon is not a party to the arbitration agreement. SCI argues, however, that Lanyon is a third-party beneficiary of the Purchase Agreement and therefore is bound to arbitrate his claims against SCI.
Generally, a "nonsignatory to an arbitration agreement cannot be forced to arbitrate her claims." Cook's Pest Control, 807 So.2d at 526, citing Ex parte Stripling, 694 So.2d 1281 (Ala. 1997). However, if a nonsignatory has enjoyed the benefits of the agreement containing the arbitration provision, he may not avoid the arbitration provision simply because he did not sign the agreement. Wolff Motor Co. v. White, 869 So.2d 1129 (Ala. 2003). See Equifirst Corp., 808 So.2d at 5 ("This Court has enforced an arbitration provision against a nonsignatory plaintiff when that nonsignatory plaintiff claimed the benefit of the contract containing the arbitration provision but attempted to avoid the application of the arbitration provision."); seealso Ex parte Dyess, 709 So.2d 447 (Ala. 1997).
In the present case, Lanyon negotiated for the services provided by the Purchase Agreement, and he benefited from those services, i.e., his son's body was embalmed and buried. Lanyon concedes that he is a third-party beneficiary of the Purchase Agreement. Thus, the only question is whether Lanyon's claims arise out of the Purchase Agreement.
In his complaint, Lanyon did not allege breach of contract; instead, his complaint alleges various torts. However, this Court has repeatedly stated "`"that a party may not avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract."'" ECS, Inc. v. GoffGroup, 880 So.2d 1140, 1147 (Ala. 2003) (quoting Beaver Constr.Co. v. Lakehouse, L.L.C., 742 So.2d 159, 165 (Ala. 1999), quoting in turn McBro Planning Dev. Co. v. Triangle Elec.Constr. Co., 741 F.2d 342, 344 (11th Cir. 1984)).
In the present case, Lanyon has alleged negligence, wantonness, and the tort of outrage — all tort claims; however, those claims arise out of SCI's allegedly defective embalming of Steve's body. The embalming procedure was not only anticipated in the Purchase Agreement, it was specifically provided for. Therefore, all of Lanyon's claims arise out of the Purchase Agreement.
Because Lanyon is a third-party beneficiary of the Purchase Agreement, Lanyon must submit his claims to arbitration. SCI also argues that Lanyon is required to submit his claims to arbitration under an intertwined-claims theory; however, because we hold that as a third-party beneficiary of the Purchase Agreement Lanyon must submit his claims to arbitration, we need not address that argument.
 Conclusion
The trial court's order denying SCI's motion to compel arbitration is reversed, and this case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NABERS, C.J., and HOUSTON, SEE, LYONS, BROWN, HARWOOD, and WOODALL, JJ., concur.
JOHNSTONE, J., dissents.
[1] Steven Lanyon is the decedent's formal name; however, he is referred to throughout the record as "Steve."
[2] According to the trial court, there was no evidence presented to indicate that in paying SCI Adams was acting as an agent for Lanyon. *Page 499