[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 854 
Bad Toys Holdings, Inc. ("BTH"), Southland Health Services, Inc. ("Southland"), Emergystat of Sulligent, Inc. ("Emergystat"), and Larry Lunan (collectively referred to as "the petitioners"), the defendants in an action filed in the Lamar Circuit Court by Glenn Crawford and C G Management, Inc. (collectively referred to as "Crawford"), moved the trial court to dismiss Crawford's claims against them on the basis of a forum-selection clause that, they allege, provides that Sullivan County, Tennessee, is the exclusive venue for Crawford's claims. The trial court denied the petitioners' motion. The petitioners now seek mandamus relief from this Court. We grant their petition and issue the writ.
 I.
BTH is a Tennessee-based corporation that serves as a holding company for several businesses. Emergystat is a company that provides ambulance services; it is based in Vernon, Alabama. In 2004, BTH's chief executive officer, Larry Lunan, entered into negotiations with Glenn Crawford, president and majority shareholder of Emergystat, for BTH to purchase Emergystat. While those negotiations were ongoing, Emergystat expanded its operations into Tennessee and Virginia by purchasing the assets of other companies providing ambulance services. A new company, Southland, was formed to own and operate the combined entities. In December 2004, BTH signed a letter of intent to purchase Southland once all the companies were combined into it.
On February 2, 2005, BTH signed a contract to purchase the majority interest in Southland; BTH was to pay for its interest with cash and BTH stock. Paragraph 9.6 of the contract stated: *Page 855 
 "9.6 Application of Tennessee Law; Venue:
This Agreement, and the application or interpretation thereof, shall be governed exclusively by its terms and by the laws of the State of Tennessee. Venue for any legal action which may be brought hereunder shall be deemed to lie in Sullivan County, Tennessee."
The contract was amended on February 4, 2005. Both the contract and the amendment (collectively referred to as "the purchase agreement") were signed by Glenn Crawford.[1]
BTH alleges that after the purchase transaction closed it discovered that Southland's financial condition had been severely misrepresented and that multiple liabilities of Southland had not been disclosed. On December 12, 2005, BTH sued Crawford and the other parties to the purchase agreement in Sullivan County, Tennessee.
On December 30, 2005, Crawford responded by suing the petitioners in the Lamar Circuit Court, alleging conversion, detinue and replevin, fraud and misrepresentation, deceit, civil conspiracy, negligence and wantonness, negligent supervision and training, the tort of outrage, and default on a promissory note that was allegedly separate and distinct from the purchase agreement. The gravamen of the complaint was that BTH had not transferred stock, warrants, and other consideration allegedly due under the purchase agreement. Crawford framed all of his claims, including the default claim, as tort claims, though they arise out of a contractual relationship.
On February 9, 2006, the petitioners moved the Lamar Circuit Court to dismiss counts 6 through 14 of Crawford's complaint, i.e., the claims against them, on the basis of the forum-selection clause in paragraph 9.6 of the purchase agreement.[2] On May 4, 2006, the Lamar Circuit Court denied the petitioners' motion, holding that "the forum selection clause is permissive and non-exclusive and does not encompass the claims in the present action." On June 14, 2006, the petitioners timely petitioned this Court for a writ of mandamus directing the trial court to vacate its May 4, 2006, order and to grant their motion to dismiss.
 II. "`[A] petition for a writ of mandamus is the proper vehicle for obtaining review of an order denying enforcement of an "outbound" forum-selection clause when it is presented in a motion to dismiss.' Ex parte D.M. White Constr. Co., 806 So.2d 370, 372
(Ala. 2001); see Ex parte CTB, Inc., 782 So.2d 188, 190 (Ala. 2000). `[A] writ of mandamus is an extraordinary remedy, which requires the petitioner to demonstrate a clear, legal right to the relief sought, or an abuse of discretion.' Ex parte Palm Harbor Homes, Inc., 798 So.2d 656, 660 (Ala. 2001). `[T]he review of a trial court's ruling on the question of enforcing a forum-selection clause is for an abuse of discretion.' Ex parte D.M. White Constr. Co., 806 So.2d at 372."
Ex parte Leasecomm Corp., 886 So.2d 58, 62
(Ala. 2003). Thus, we review the trial court's May 4, 2006, order to determine whether the trial court exceeded its discretion in concluding that the forum-selection clause in the purchase agreement (1) is *Page 856 
"permissive and non-exclusive" and (2) "does not encompass the claims" in Crawford's action.
 III.
As a preliminary matter, we note that the validity of the outbound forum-selection clause in this case is not at issue; the validity of such clauses is well established in Alabama law.Professional Ins. Corp. v. Sutherland, 700 So.2d 347
(Ala. 1997). A forum-selection clause is presumed to be valid "unless the party challenging the clause clearly establishes that it would be unfair or unreasonable under the circumstances to hold the parties to their bargain." Ex parte CTB,Inc., 782 So.2d 188, 190-91 (Ala. 2000). Crawford has not argued, and the trial court did not hold, that the forum-selection clause in the purchase agreement was unfair or unreasonable. Rather, the trial court held that the clause was "permissive," "non-exclusive," and inapplicable to Crawford's claims. We address those findings in turn.
The forum-selection clause in the purchase agreement provides that "[v]enue for any legal action which may be brought hereunder shall be deemed to lie in Sullivan County, Tennessee" (emphasis added). The petitioners argue that the use of the word "shall" in the forum-selection clause makes the clause mandatory, not permissive. This Court has considered the import of the word "shall" previously and stated:
 "The word `shall' is clear and unambiguous and is imperative and mandatory. Tuscaloosa County Comm'n v. Deputy Sheriffs' Ass'n of Tuscaloosa, [589 So.2d 687 (Ala. 1991)]; Taylor v. Cox, 710 So.2d 406 (Ala. 1998); Ex parte First Family Financial Services, Inc., 718 So.2d 658
(Ala. 1998) (on application for rehearing) (interpreting the word `shall' as used in § 6-3-21.1). The word `shall' has been defined as follows:
 "`As used in statutes, contracts, or the like, this word is generally imperative or mandatory. In common or ordinary parlance, and in its ordinary signification, the term "shall" is a word of command, and one which has always or which must be given a compulsory meaning; as denoting obligation. The word in ordinary usage means "must" and is inconsistent with a concept of discretion.'
 "Black's Law Dictionary 1375 (6th ed.1991)."
Ex parte Prudential Ins. Co. of America,721 So.2d 1135, 1138 (Ala. 1998).
Crawford nonetheless notes that this Court has also stated that the word "`shall' may also be construed as being permissive where the intent of the legislature would be defeated by making the language mandatory." Ex parteBrasher, 555 So.2d 192, 194 (Ala. 1989). However, the principle espoused in Ex parte Brasher was applied in interpreting a statute, not a contract. In the present case, nothing in the purchase agreement indicates that the parties intended that the word "shall" mean anything other than what it ordinarily means. "[Shall] in ordinary usage means `must' and is inconsistent with a concept of discretion." Black's LawDictionary 1375 (6th ed.1991).[3] *Page 857 
We also note that BTH has its principal place of business in Sullivan County, Tennessee, and on that basis alone Sullivan County would be an appropriate venue for any action related to the purchase agreement — regardless of whether the purchase agreement contained a forum-selection clause stating that venue was proper in Sullivan County. See Tenn. Code. Ann., § 20-4-101(a) (West 1994) ("In all civil actions of a transitory nature, unless venue is otherwise expressly provided for, the action may be brought in the county where the cause of action arose or in the county where the defendant resides or is found."). Thus, if this Court were to accept Crawford's argument and construe the forum-selection clause as permissive only, we would in essence eviscerate the clause of any meaning whatsoever, contrary to the principle that "this Court is bound to construe contracts so as to give meaning to all provisions whenever possible." Board of Water Sewer Comm'rs ofMobile v. Bill Harbert Constr. Co., 870 So.2d 699, 710
(Ala. 2003). That the parties intended to do something more than merely agree that venue was proper in Sullivan County is further evidenced by Crawford's artful attempt to avoid the forum-selection clause by sounding his claims in tort rather than in contract.
For these reasons, we hold that the forum-selection clause in the purchase agreement mandates that venue for any legal action brought pursuant to the purchase agreement lies in Sullivan County, Tennessee.
 IV.
Having determined that the forum-selection clause in the purchase agreement is mandatory, we must now determine *Page 858 
whether it encompasses the claims made by Crawford against the petitioners. The trial court determined that the forum-selection clause did not govern Crawford's claims, presumably because he had framed those claims as tort claims, as opposed to contract claims, and the claims were not, therefore, "brought . . . under [the purchase agreement]." The petitioners argue that even though Crawford's claims sound in tort, they are intertwined with the purchase agreement, and, in fact, they all arise out of it. Therefore, they argue, the claims are encompassed by the forum-selection clause, which, by its language, applies to "any legal action which may be brought hereunder." The petitioners further note that this Court has, in the past, enforced forum-selection clauses so as to require the dismissal of complaints asserting both contract and tort claims. See Exparte Rymer, 860 So.2d 339 (Ala. 2003); Ex parte D.M.White Constr. Co., 806 So.2d 370 (Ala. 2001); and Exparte O'Brien Eng'g Co. v. Continental Machs., Inc.,738 So.2d 844 (Ala. 1999).
Crawford argues that by its language the forum-selection clause is limited to contractual claims. He seeks to distinguish the cases cited by the petitioners by noting that the plaintiffs in each of those cases asserted breach-of-contract claims as well as tort claims, while his claims against the petitioners are, he says, strictly tort claims and he alleges no breach of contract.
We agree with the petitioners that Crawford's claims are "brought under" the purchase agreement. Although this Court has not specifically addressed whether a forum-selection clause such as the one in this case might apply to tort claims related to the contract, authority in other jurisdictions holds that they do. In Picken v. Minuteman Press International,Inc., 854 F.Supp. 909, 911 (N.D.Ga.1993), the United States District Court for the Northern District of Georgia considered a forum-selection clause similar to the one here and stated that "[r]eading the word `hereunder' to apply only to a pure breach of contract claim between the parties would be unduly crabbed and narrow. `Hereunder' refers to the relations that have arisen as a result of this contract." Other courts interpreting the word "hereunder" have reached similar conclusions. See Banco Popular de Puerto Rico v. AirborneGroup PLC, 882 F.Supp. 1212 (D.P.R.1995); and WarnacoInc. v. VF Corp., 844 F.Supp. 940 (S.D.N.Y.1994).
Although Crawford frames his claims as sounding in tort, it is clear that all of the claims relate to BTH's alleged failure to transmit to Glenn Crawford consideration he is allegedly due under the purchase agreement. In count 6, Crawford alleges that the petitioners converted stock and warrants for stock options. In count 7, Crawford seeks to recover chattel property (stock and stock options) held by the petitioners. In count 8, Crawford alleges that the petitioners fraudulently misrepresented that they would deliver stock certificates and warrants to Glenn Crawford. In count 9, Crawford alleges deceit pursuant to § 6-5-104, Ala. Code 1975, based on the petitioners' alleged misrepresentation that they would deliver stock and warrants to Glenn Crawford. In count 10, Crawford alleges that the petitioners conspired to convert stock and warrants that rightfully belonged to Glenn Crawford. In count 11, Crawford alleges that the petitioners negligently or wantonly allowed the stock and warrants due Glenn Crawford to not be delivered. In count 12, Crawford alleges that the petitioners negligently supervised and trained their employees so that those employees did not deliver to Glenn Crawford the stock and warrants he was due. In count 13, Crawford alleges that the petitioners' actions — essentially breach of contract — constitute the tort of outrage. Finally, in count 14, Crawford alleges default *Page 859 
on a promissory note; that note was executed in conjunction with the purchase agreement.
Although Crawford has taken great care to avoid any mention of the purchase agreement in his complaint, he has offered no other basis for his claim to the stock, warrants, and money that he seeks to recover. Rather, all of the facts before both the trial court and this Court indicate that Crawford's only claim to the damages he seeks is vis-à-vis the purchase agreement that obligated BTH to transmit certain consideration to him. BTH has directly stated as much, and Crawford has not disputed it, implicitly or explicitly. Certainly, Crawford has set forth no facts alleging tortious misconduct on the part of BTH that is unrelated to the purchase agreement. To the contrary, Crawford's own statement of facts, when viewed in light of the original February 2, 2005, contract and the February 4, 2005, amendment, makes clear that his claims are based on the purchase agreement:
 "[I]n February 2005, the defendants likewise wrongfully detained and converted stock certificates and warrants for stock in the defendant Bad Toys belonging to the plaintiff [Glenn] Crawford. The defendant Lunan represented to [Glenn] Crawford that if [Glenn] Crawford would forward [Glenn] Crawford's shares of Southland stock, the defendants would deliver to [Glenn] Crawford certificates of stock in Bad Toys. [Glenn] Crawford performed as agreed, but the defendants failed and refused to deliver said certificates and warrants as promised and agreed, instead converting the certificates and warrants to their own dominion and use."
Although Crawford has carefully avoided making any reference to the purchase agreement, he is essentially seeking the same relief that would flow from a breach-of-contract claim. "Strategic or artfully drawn pleadings . . . will not work to circumvent an otherwise applicable forum selection clause."Terra Int'l, Inc. v. Mississippi Chem. Corp.,119 F.3d 688, 695 (8th Cir.1997). Therefore, because Crawford's claims stem from the purchase agreement, they are subject to the forum-selection clause contained in that agreement and should accordingly be dismissed without prejudice.[4]
 V.
Two lawsuits have resulted from this controversy: one in the forum specified by *Page 860 
the purchase agreement and a later filed action in Alabama. Certainly, the intent of the forum-selection clause was that controversies arising under the purchase agreement would be settled in a single forum, i.e., Sullivan County, Tennessee. Our decision today reflects that intent, as well as this Court's policy of promoting judicial economy. See Ex parte Soprema,Inc., 949 So.2d 907, 915 (Ala. 2006) (stating that the policy of judicial economy disfavors two actions involving similar claims being tried in different courts).
The trial court denied the petitioners' motion to enforce the forum-selection clause in the purchase agreement between BTH and Crawford because, the trial court held, the clause was permissive and nonexclusive and did not encompass Crawford's claims, which the trial court apparently believed sounded in tort. For the reasons set forth above, we hold that the trial court exceeded its discretion in reaching that conclusion. The trial court is directed to vacate its May 4, 2006, order denying the petitioners' motion to dismiss and to enter an order granting that motion and dismissing counts 6 through 14 of Crawford's complaint.
PETITION GRANTED; WRIT ISSUED.
SEE, LYONS, HARWOOD, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
WOODALL, J., concurs in the result.
[1] The purchase agreement also encompassed the purchase by BTH of the interests of two other individuals in Southland. However, those individuals are not parties to this action.
[2] Counts one through five of the complaint assert claims against parties other than the petitioners.
[3] Our conclusion that the forum-selection clause in the purchase agreement is mandatory, as opposed to permissive, is consistent with the approach of other jurisdictions that have considered similar clauses. In K V Scientific Co. v.Bayerische Motoren Werke Aktiengesellschaft, 314 F.3d 494,496 (10th Cir.2002), the United States Court of Appeals for the Tenth Circuit held that a provision stating that "[j]urisdiction for all and any disputes arising out of or in connection with this agreement is Munich" was permissive. In reaching that conclusion, the court reviewed the state of the law on the issue:
 "[C]ase law from other circuits involving forum selection clauses similar to the one at issue here is surprisingly uniform. Generally speaking, the circuits that have addressed the issue are in agreement that where venue is specified [in a forum selection clause] with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified [in a forum selection clause], the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive. Paper Express, Ltd. v. Pfankuch Maschinen GmbH, 972 F.2d 753, 757 (7th Cir.1992); see John Boutari Son, Wines Spirits, S.A. v. Attiki Imp. Distrib. Inc., 22 F.3d 51, 52 (2d Cir.1994) (same); Docksider, Ltd. v. Sea Tech., Ltd., 875 F.2d 762, 764 (9th Cir. 1989) (same); Citro Florida[, Inc. v. Citrovale, S.A., 760 F.2d 1231, 1232 (11th Cir.1985)] (concluding that language of forum selection clause discussing jurisdiction in nonexclusive language reasonably could be construed as permissive); Keaty v. Freeport Indonesia, Inc., 503 F.2d 955, 957 (5th Cir.1974) (same)."
314 F.3d at 499.
This Court has likewise recognized the distinction between jurisdiction and venue. Pepperell Mfg. Co. v. Alabama Nat'lBank of Montgomery, 261 Ala. 665, 667, 75 So.2d 665, 667
(1954). Subject-matter jurisdiction concerns "the power
lawfully conferred on a court to entertain a suit or proceeding, consider the merits, and render a binding decision thereon."Id. Moreover, "the subject-matter jurisdiction of Alabama courts is conferred only by the provisions of the Alabama Constitution and statute." O'Brien Eng'g Co. v.Continental Machs., Inc., 738 So.2d 844, 848-49 (Ala. 1999) (See, J., dissenting). Venue, on the other hand, is based primarily on convenience to the parties. Pepperell,261 Ala. at 667, 75 So.2d at 667. It is generally not a condition precedent to the exercise of a court's power but relates instead to the appropriateness of the location of the action. Importantly, although venue may sometimes be appropriate in multiple forums, parties may, via a forum-selection clause, contract in advance to restrict venue to a single forum. However, "`[s]ubject matter jurisdiction can neither be conferred by agreement nor can it be waived.'" O'Brien Eng'gCo., 738 So.2d at 849 (See, J., dissenting) (quotingInternational Longshoremen's Ass'n v. Davis,470 So.2d 1215, 1216 (Ala. 1985)).
[4] This Court has previously considered a similar issue, albeit in the context of an arbitration provision. In SCIAlabama Funeral Services, Inc. v. Lanyon, 896 So.2d 495
(Ala. 2004), Wilbert Lanyon sued SCI Alabama, a funeral-services provider, after his son's body began to decompose before burial because of problems with the embalming process. The contract authorizing SCI Alabama to embalm the body contained an arbitration provision stating that "[y]ou agree that any claim you may have relating to the transaction contemplated by this agreement . . . shall be submitted to and finally resolved by mandatory and binding arbitration. . . ." 896 So.2d at 497. Lanyon sought to avoid the arbitration provision by casting his complaint in tort, as opposed to contract; however, this Court rejected his attempt to so cast his complaint, stating:
 "In his complaint, Lanyon did not allege breach of contract; instead, his complaint alleges various torts. However, this Court has repeatedly stated `"`that a party may not avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract.'"' ECS, Inc. v. Goff Group, 880 So.2d 1140, 1147 (Ala. 2003) (quoting Beaver Constr. Co. v. Lakehouse, L.L.C., 742 So.2d 159, 165 (Ala. 1999), quoting in turn McBro Planning Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342, 344 (11th Cir.1984)).
 "In the present case, Lanyon has alleged negligence, wantonness, and the tort of outrage — all tort claims; however, those claims arise out of SCI's allegedly defective embalming of [the son's] body. The embalming procedure was not only anticipated in the Purchase Agreement, it was specifically provided for. Therefore, all of Lanyon's claims arise out of the Purchase Agreement."
896 So.2d at 498. Accordingly, this Court held that Lanyon was required to submit his claims against SCI Alabama to arbitration.